RADIANT BURNERS, INC., an Illinois corporation, Plaintiff,

v.

AMERICAN GAS ASSOCIATION, a not-for-profit corporation; Allied Gas Co., a corp.; Autogas Company, a corp.; Central Illinois Electric and Gas Co., a corp.; Central Illinois Public Service Company, an Illinois corp.; Central Indiana Gas Company, an Indiana corp.; Citizens Gas & Coke Utility, an Indiana corp.; Crown Stove, a corp.; Gas Appliance Service, Inc., a corp.; Illinois Power Company, an Illinois corp.; Indiana Gas & Water Company, an Ill. corp.; Mid-Continent Metal Products Company, a corp.; Michigan Consolidated Light Company, a Michigan corp.; Florence Stove Company, a corp. to be known as Geo. D. Roper Corporation; Milwaukee Gas & Light Company, a Wisc. corp.; Natural Gas Pipeline Co. of America, a corp.; Northern Indiana Public Service Company, an Ind. corp.; Norge Sales Corp., a corp.; North Shore Gas Co., an Ill. corp.; Portland Gas & Coke Company, a Washington corp.; Sellers Engineering Company, a corp.; Texas-Illinois Natural Gas Pipeline Co., a corp.; Washington Natural Gas Company, a Washington corp.; Wisconsin-Michigan Power Company, a Wisc. corp., Defendants.

No. 57 C 1167.

United States District Court
N. D. Illinois, E. D.

Aug. 3, 1962.

See Memorandum and Order Oct. 11, 1962, 209 F.Supp. 321.

Lee A. Freeman, Richard F. Levy, Victor Neumark, Chicago, Ill., for plaintiff.

Ross, McGowan & O'Keefe, Chicago, Ill., for Peoples Gas Light & Coke Co.

Isham, Lincoln & Beale, Chicago, Ill, for Northern Illinois Gas Co.

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for American Gas Association, Inc.

James J. Gaughan, Chicago, Ill., for Autogas Company.

Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., for North Shore Gas Company.

MacLeish, Spray, Price & Underwood, Chicago, Ill., for Bryant Manufacturing Co.

Bell, Boyd, Marshall & Lloyd, Chicago, Ill., for General Electric Co.

Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., for Delco

Appliance Division of General Motors Corporation.

Olson, Mecklenburger, von Holst, Pendleton & Neuman, Chicago, Ill., for Janitrol Heating & Air-Conditioning, a Division of Midland-Ross Corporation.

Brainerd Chapman, Chicago, Ill., for Mueller Climatrol Division of Worthington Corp.

Karl C. Williams, Rockford, Ill., and Porter, Quale, Porter & Zirbel, Milwaukee, Wis., for Permaglas Div. of A. O. Smith Corporation.

Winston, Strawn, Smith & Patterson, Chicago, Ill., for Heating & Air-Conditioning Division of Stewart-Warner Corporation, for defendants.

CAMPBELL, Chief Judge.

This cause since coming to my calendar recently has been satisfactorily proceeding with discovery and pre-trial in accordance with the excellent procedures established in these fields for protracted anti-trust litigation by the Judicial Conference. I take this opportunity of again expressing to all counsel my appreciation for their cooperation and assistance in this regard.

As part of this procedure, I have recently read and considered several files of assorted documents from the New York law firm of LeBoeuf, Lamb and Leiby, submitted by counsel of record herein for the American Gas Association, hereinafter referred to as AGA, a defendant. It is AGA's contention that the information contained in these files was obtained by the LeBoeuf firm in their capacity as attorneys for AGA and therefore the documents were and are privileged from disclosure to the plaintiff. At a pretrial hearing on April 27, 1962, I indicated certain documents upon which I found this claim of privilege to have been properly asserted. I returned these documents to AGA's attorneys. At the same time I designated other documents which I found did not justify an allowance of the claim of attorney-client privilege, whereupon these were delivered over to plaintiff's attorney for inspection. Thus, with the exception of a relatively small portion of one of the files I have either returned or delivered over for inspection all of the documents presented to me so as not to interrupt our pre-trial discovery schedule.

Remaining now before me are eight letters which I have retained from file "619" for further consideration upon briefs and for ruling by memorandum. At a subsequent pre-trial hearing on May 7, 1962, I received an additional document for consideration from another defendant, the Delco Appliance Division of General Motors. This document will also be considered in this memorandum.

Consideration of these documents has provided a welcome opportunity to research and reconsider the general field of attorney-client privilege, aided as I have been by the extensive briefs of so many learned counsel. This privilege embraces the oldest and still most widely and willingly accepted confidential communication known to the law and as such much has been written on the subject and much thought has been given to the application of its ancient basic principles. After reading through most of the voluminous writings relating to the privilege in general, I find that few judges or legal scholars seem to have had occasion to consider the privilege as it applies to corporations, or for that matter if indeed it should so apply. I myself and from their briefs all counsel herein, have taken for granted or presumed that a corporation is entitled to the privilege. Indeed, as previously noted herein I have granted it in this case. My subsequent research into the problem, however, has failed to indicate any authority for so doing or wherein the courts *decided* that the privilege should be extended to corporations. Quite to the contrary this research leads me to conclude that a corporation's right to assert the privilege has somewhat generally been taken for granted by the judiciary, myself included, without a proper reliance on *stare decisis* or the promulgation anywhere of record of a clear legal analysis of the issues involved. In those federal and state cases where the attorney-client privilege has been taken for granted as

having been extended to a corporate client, and parenthetically I might add that the number of such cases is far fewer than one might be led to suspect, the courts have significantly and completely omitted discussion of the basic issue in their opinions.

The Supreme Court in United States v. Louisville and Nashville Railroad Co., 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 did seem to speak in favor of the attorney-client privilege relative to a railroad corporation. However, the issue was not squarely placed before the Court, and in any event was not discussed and certainly not *decided*. The Court did discuss the scope and extent of a Congressional investigation statute sought to be enforced by the government against the railroad company. In extending limited application to the statute it held that correspondence *per se* was not intended to be included within the ambit of the statute. It therefore naturally followed that attorney-client correspondence was not subject to investigation. As a matter of fact, all correspondence, not only that between attorney and client, was held not subject to investigation. In an otherwise somewhat lengthy opinion the Court devoted only one small paragraph to the mention of the attorney-client privilege. It observed that the government's brief had not even placed this question in issue, and in casually acknowledging the existence of the privilege cited two cases; Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U.S. 457, 24 L.Ed. 251 and Blackburn v. Crawfords, 3 Wall. 175, 18 L.Ed. 186.

A reading of the Connecticut Mutual case shows the Court therein to have extended the privilege to an individual and not even to have considered applying the privilege to a corporate client. The Blackburn decision accepted the testimony of the attorney notwithstanding the assertion of the privilege, and further, the Court was there also considering an individual and not a corporate client. Both of these cases contain a good general discussion of the attorney-client privilege but neither case ever considers the possibility of a corporation being the client.

■ Therefore, having after much study and consideration personally come to the point of questioning the application of the attorney-client privilege to a corporate client, I now suggest to the profession and adopt as the law of this case that a corporation is not entitled to make claim to the privilege for the following reasons.

■ The attorney-client privilege, analogous to the privilege against self-incrimination, is historically and fundamentally personal in nature. Both privileges have their genesis in the common law, and both still exist independently of statute. (The 5th Amendment to the Constitution merely guarantees the self-incrimination privilege against legislative action). Although at earliest common law the attorney-client privilege was solely that of the attorney, since the eighteenth century, and as it now exists, the privilege rests entirely with the client. It logically follows that this personal privilege of the client must, as in the case of the personal privilege against self-incrimination, be claimed only by natural individuals and not by mere corporate entities. As to denying corporations the privilege against self-incrimination see Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; and Essgee Co. v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917. *A fortiori*, a corporation which is a mere creature of the state and not a natural entity should not, without legislation, be afforded a privilege historically created only for natural persons.

■ Still another reason exists for denying the attorney-client privilege to corporations. One of the fundamental, universally accepted and most generally stated common law elements necessarily required properly to claim the attorney-client privilege is that the communication be completely confidential between the attorney and the client. Accordingly, if any of the attorney's or client's documents or verbal statements are subject to

being disclosed to third parties, anyone other than the attorney or the client, then those documents or statements can no longer be regarded as confidential, the confidence having in the language of the common law been "profaned" and the privilege terminated. Such "profanity" could occur either at the source or point of origin of the information, or, it could take place at the intended repository of the information, should at either place a third party stranger have access to it.

Were we to assume, as obviously many of us have heretofore, that a corporation may claim the privilege, then we are immediately presented with the anomalous situation of determining what persons within the corporate structure hold its confidence and may properly be considered as its *alter ego* and therefore the "client." In making such a determination should we include within the scope of the term "client" the corporation's president? What then of other officers, members of the board of directors, executive committee members, supervisory personnel, office workers, or for that matter any employee, and finally what about the individual stockholders? If an individual is not permitted to make an agent of still another individual, or more accurately of large groups of individuals, and thus increase the scope of the protection afforded to him through the attorney-client privilege and "profane" its confidence why permit a corporation to do the same thing through normal corporate operations? Clearly, even at common law the client's necessity and the attorney's of having immediate office personnel permitted access to documents without destroying their confidential nature is accepted and approved. (The solicitor or the barrister's clerk for example.) However, it is obvious that there is no comparison between this accepted extension of the scope of the terms "attorney" and "client", and an attempted extension of the term to encompass all those persons who constitute a corporate entity. This is well illustrated by considering the boards of directors and executive committees of most large corporations. Such groups are often made up of dominant and influential individuals of other corporations and organizations, with many of which the corporation has business dealings. (This incidentally, is precisely the situation in this case, AGA's executive committees being composed of executives not only from utility companies but from utility manufacturers as well, most of whose companies have extensive business dealings with each other. It would be folly to think that these individuals are not in fact serving in a dual capacity, and acting as conduits through which information acquired at committee meetings is transmitted back to their other organizations). Information from or in the hands of these individuals would unquestionably be information from or in the hands of persons outside the scope of the term "client," as this term is intended with reference to the attorney-client privilege. It is most unrealistic to presume that such communications are made with the intention of confidentiality or could possibly avoid the "profanation" so clearly condemned by the Rule as created at common law. As Wigmore states (Sec. 2291) "It (the attorney-client privilege) ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." Another and later commentary is in my opinion salient to this issue: "Where corporations are involved, with their large number of agents, masses of documents and frequent dealings with lawyers, the zone of silence grows large. Few judges—or legislators either, for that matter—would long tolerate any common law privilege that allowed corporations to insulate all their activities by discussing them with legal advisors." Simon, "The Attorney-Client Privilege As Applied to Corporations", 65 Yale L.J. 953, 955–6 (1956).

It seems to me that the corporate entity is best exemplified for the purpose of claiming this privilege by those who actually share in its ownership, the shareholders, it being only for their benefit that a corporation could make

claim to the privilege. Since, then, the privilege is being asserted for their benefit it would seem that they best qualify as the "client." Thus the term "client" is in many instances extended to include literally thousands of persons in a single corporation. Both at common law, and in many instances also by statute the shareholders have the right always to inspect corporate files and records. As owners they of course have the right to inspect property held by their agents. Although some jurisdictions might place minor restrictions aimed at protecting the interest of other owners upon it, the basic right to reasonable inspection always exists and cannot be abrogated even by the articles of incorporation. Once again it becomes apparent that the confidential nature of communications and documents so vital an element of the attorney-client privilege could never exist when such documents and information are readily available to so many thousand persons, whose qualifications for the most part are solely a monetary interest. Indeed, since all of the activities of every corporation are only for the common or group interest, it can never assert a reasonable or proper claim of secrecy. The Supreme Court has recently alluded to this fact in citing the members right to inspect as grounds for denying a union the privilege against self-incrimination. United States v. White, 322 U.S. 694, 699–700, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542.

An additional third party or "stranger" to a corporation "profaning" any possible confidential nature of corporate books and records is its State of incorporation with its proper visitatorial power over such records. Once a group of individuals elect to form a corporate entity there can be no overriding desire of secrecy, and the circumstances would argue against any desire to keep documents confidential from all others excluding themselves. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771. One of the prices one pays for the limitation of personal liability through incorporation is the loss of personal privileges one might otherwise have in individual business transactions.

The basic rationale of the attorney-client privilege and the reason prompting its creation apparently is the compelling desire to promote genuine freedom of communication between an individual and his attorney. In its historic genesis in the common law it is so intimately entwined with its great partner the privilege against self incrimination that a person reading its history begins to doubt that two separate privileges ever were originally intended. Rather the one seems to be but an extension and outgrowth of the other, both being limited to a purely personal application and both being restricted as obviously is the one, solely to the field of criminal law. Usage thereafter however has definitely established at common law the application of the attorney-client privilege to civil litigation although always retaining its purely personal character.

Although the same basic rationale would in my opinion warrant extending a similar privilege to a corporation dealing with its attorney this is impossible at common law because of the secrecy element of the privilege as heretofore pointed out herein. Thus nowhere can a corporation's right to the privilege be found in the common law. Neither can I find any legislative or judicial fiat extending the privilege beyond its historic common law limitations.

Since the primary element of secrecy essential to any claim of the attorney-client privilege is not possible in the case of a corporation and since in any event the privilege is purely personal, I hold that it is not available to any of the corporate parties to this suit.

█ I should point out in conclusion that, although not yet placed in issue here, certain valid claims of privilege do exist and may properly be asserted to protect a corporation against unbridled discovery. (See Wigmore on Evidence, Volume VII, Sections 2212, 2219 and 2219(c) in re "trade secrets" and "statutory protections." Another claim of

privilege exists—that of an attorney to protect his "work product" from discovery. In many instances this and the attorney-client privilege seem to overlap, their cognate natures often causing basic misapplications. My finding that the attorney-client privilege can not be claimed by these corporations has no relation to any possible withholding of documents from the plaintiff in light of the "work product" privilege.

 The attorney "work product" privilege, to be distinguished from the attorney-client privilege, is historically and traditionally a privilege of the attorney and not that of the client. Its rationale is based upon the right of lawyers to enjoy privacy in the course of their preparations for suit. Consequently, the fact that the client is a corporation would in no way affect the claim of an attorney to his "work product" privilege. In this case many of the documents of AGA which I have previously improperly excluded in an erroneous application of the attorney-client privilege to a corporation are properly excludable by virtue of the attorney's "work product" privilege. (See Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.)

As for the specific documents still before me; the eight letters of AGA from file "619" and the letter of the Delco Appliance Division of General Motors I hold for the reasons herein above stated that the attorney-client privilege asserted regarding them is not available to the defendants. Upon further review of the said documents I also hold that even if timely claimed the attorney "work product" privilege would also be inapplicable to them. I can find no other valid claim of privilege which properly could be asserted to withhold them and accordingly I herewith deliver the said documents to plaintiff's attorney for inspection.

May I again reiterate what I have stated at many of our pre-trial conferences, that all documents I have ordered delivered up to any party for inspection have been within what I regard as the proper scope of pre-trial discovery and no other party is thereby precluded from asserting a valid objection to any such documents' admissibility upon its being offered in evidence at the trial.