**AMERICAN CYANAMID COMPANY,**
**Plaintiff,**

v.

**HERCULES POWDER COMPANY,**
**Defendant.**

**Civ. A. No. 2248.**

United States District Court
D. Delaware,
Nov. 2, 1962.

Alexander L. Nichols (of Morris, Nichols, Arsht & Tunnell), Wilmington, Del., and John T. Kelton (of Watson, Leavenworth, Kelton & Taggart), New York City, of counsel, for plaintiff.

William S. Potter (of Berl, Potter & Anderson), Wilmington, Del., Theodore S. Kenyon, Ralph L. Chappell and Francis T. Carr (of Kenyon & Kenyon), New York City, of counsel, for defendant.

CALEB M. WRIGHT, Chief Judge.

This is an action arising under the patent laws of the United States and at this stage of the proceedings important questions concerning discovery are raised. Plaintiff, American Cyanamid Company is suing the defendant, Hercules Powder Company, for infringement of its Daniel Patent No. 2,595,935, alleging that plaintiff's rights are infringed by Hercules' sale of resin products under its subsequently obtained Keim Patents Nos. 2,926,116 and 2,926,154. Both parties have made motions under Rule 34 for the production

of specific documents in the other's possession. Plaintiff has also moved to compel answers to certain interrogatories. Discovery is resisted on the grounds of attorney-client privilege.[1]

The Court will discuss what it deems to be the general guidelines laid down by the federal courts relative to the privilege. Then the respective motions will be considered and each document analyzed to determine whether it falls within the metes and bounds of the attorney-client immunity.

The attorney-client prerogative is rooted in the idea that litigation under our adversary system can be handled more expeditiously if clients make full disclosure to their attorneys.[2] Client's disclosure is encouraged by the principle that they may object in court when confidential information is sought from their lawyers.[3] It seems clear that these policy considerations come into direct clash with the philosophy of the Federal Rules that "mutual knowledge of all the relevant facts * * * is essential to proper litigation."[4] Despite these discordant considerations, the courts have evolved rules that clearly set out when a client may invoke this franchise.

Since it rests on the importance of encouraging disclosure from client to attorney, the person asserting the privilege must believe at the time that he is consulting a lawyer for professional advice.[5] The person consulted must be a member of some bar and be acting as a lawyer in connection with the communication.[6] The privilege is restricted to the client's own revelations;[7] however, quite often an attorney's oral conversations, letters or memos adopt a client's disclosure and therefore, traditionally, came within the cloak of the immunity.[8] Some doubt has been cast on this rule. In Hickman v. Taylor[9] the court said:

> "Nor does this privilege [attorney-client] concern the memoranda, briefs, communications and other writings prepared by counsel *for his own use* in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories."[10] (Emphasis supplied.)

Finally, because it is designed to protect the client's communications it is generally held that only he or his agents may assert or waive the privilege.[11]

1. Neither party contends that the work-product doctrine precludes discovery of the documents involved and, therefore, the Court will not discuss that issue.

2. See 3 Jones, Evidence 1345 (2d ed. 1944); McCormick, Evidence 181 (1954); 8 Wigmore, Evidence §§ 2290–2291 (McNaughton ed. 1961).

3. See McCormick, op. cit. supra, note 1, at 181.

4. See Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1946).

5. See e. g., Alexander v. United States, 138 U.S. 353, 11 S.Ct. 350, 34 L.Ed. 954 (1891); Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D. Del.1954); United States v. United Shoe Mach. Corp., 89 F.Supp. 357 (D.Mass. 1950); Grauer v. Schenley Products, 26 F.Supp. 768 (S.D.N.Y.1938). See generally, McCormick, op. cit. supra, note 1, at 183.

6. See e. g., Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D.

Del.1954); Georgia-Pacific Plywood Co. v. United States Plywood Corp., 18 F.R. D. 463 (S.D.N.Y.1956).

7. This restriction, which is often overlooked, is discussed amply in Judge Wyzanski's opinion in United States v. United Shoe Mach. Corp., 89 F.Supp. 357 (D. Mass.1950). It is a logical corollary of the policy of the privilege which is to encourage client's disclosure. See generally, 8 Wigmore, op. cit. supra, note 1, § 2317.

8. See e. g., United States v. United Shoe Mach. Corp., supra, note 7; McCormick, op. cit. supra, note 1, at 186.

9. 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1946).

10. No subsequent Supreme Court case has discussed this language.

11. Professor Wigmore states that "under the modern theory it is plainly the client's [privilege], not the attorney's. This is now never disputed." 8 Wigmore, op. cit. supra, note 1, § 2321.

While these rules may be simply stated, the problem of applying them when a corporation is involved is quite difficult.[12] The extreme size of the modern corporation with its battery of employees, directors, officers and lawyers raise a multitude of questions.[13] Who speaks for the corporation? Are the statements of all the employees the statements of the client? Are house counsel, members of the patent department and the like, lawyers for purposes of the privilege or are they mere businessmen?[14]

Generally, house counsel and members of patent departments participate in the operation of the corporate business as well as counseling their employers in law. Thus, when a corporation asserts that disclosures made to such individuals are privileged the court must develop an intelligent approach to determine whether these lawyer-employees have acted as attorneys as regards the allegedly protected disclosure. Two leading opinions in this area are Judge Wyzanski's in United Shoe[15] and Judge Leahy's in the Zenith case.[16]

In United Shoe, there were disclosures running to independent lawyers, members of the corporation's legal department, and members of the patent department. In holding only the latter unprotected, Judge Wyzanski emphasized a test of whether the person to whom the communication was made spent his time primarily on business or primarily on legal affairs.[17] All disclosures made to a person who primarily devoted his time to business (i. e., members of the patent department) were not privileged. All disclosures made to employees who primarily spent their time on legal affairs (i. e., house counsel) were protected.

Judge Leahy in the Zenith case was faced with 1600 documents which allegedly were immune from discovery. Rather than adopting an all or nothing approach, he concluded that each document must be examined separately. In his mind, whether a member of the patent department acted as a lawyer was a question of fact.[18] The answer could vary from document to document. Judge Leahy laid down general criteria to guide a specially appointed master's consideration of the factual question each document raised. He stated:

" 'Acting as a lawyer' encompasses the whole orbit of legal functions. When he acts as an advisor, the attorney must give predominantly legal advice to retain his client's privilege of non-disclosure,

12. In a recent case, Chief Judge Campbell held that the privilege could not be raised by a corporation. Radiant Burners, Inc. v. American Gas Association et al., 207 F.Supp. 771 (U.S.D.C.N.D.Ill.1962). The prongs of his decision were that the privilege was fundamentally personal in nature, that it is difficult, if not impossible to determine who speaks for the corporation, and that the primary element of secrecy, ordinarily attendant the privilege, could not be had. The court believes this to be an unjustifiable restriction of the immunity. The basis for the privilege is the importance of increasing the effectiveness of attorneys by encouraging full disclosure by the client. It seems clear that disclosure by corporations is as important as by individuals. In reality the rule articulated by Judge Campbell penalizes the strong and favors the weak, but strength is quite irrelevant to the policy of the privilege. To the extent that the learned Judge recognizes that application of the immunity to the corporation is problematical, I concur. This Court does not feel a corporation should be able to insulate vital facts by using the privilege in a perverting manner. However, in my opinion, the proper approach lies in tailoring the ordinary rules to the peculiar cloth of this legal entity. Cf. Philadelphia v. Westinghouse Elec. Corp., 210 F.Supp. 483 (D.C., 1962).

13. For an excellent discussion of the various problems involved see Simon, The Attorney-Client Privilege as Applied to Corporations, 65 Yale L.J. 953 (1956).

14. This Court shall only discuss the law relating to this last question since it need not reach the others to dispose of the present case.

15. 89 F.Supp. 357 (D.Mass.1950).

16. 121 F.Supp. 792 (D.Del.1954).

17. 89 F.Supp. at 360.

18. 121 F.Supp. at 794.

not solely, or even largely, business advice. At this stage, attorney-employees of the patent departments of RCA, GE, or WE may or may not qualify in specific instances. They do, for example, when in specific matters they are engaged in applying rules of law to facts known only to themselves and other employees of their client-companies, and in preparing cases for and prosecuting appeals in the Court of Customs and Patent Appeals and other like courts of record. They do not 'act as lawyers' when not primarily engaged in legal activities; when largely concerned with technical aspects of a business or engineering character, or competitive considerations in their companies' constant race for patent proficiency, or the scope of public patents, or even the general application of patent law to developments of their companies and competitors; when making initial office preparatory determinations of patentability based on inventor's information, prior art, or legal tests for invention and novelty; when drafting or comparing patent specifications and claims; when preparing the application for letters patent or amendments thereto and prosecuting same in the Patent Office; when handling interference proceedings in the Patent Office concerning patent applications."

■ This Court will follow Judge Leahy's opinion. It believes that the opinion allows a presiding judge to separate the wheat from the chaff—statements that should be privileged because they were made to employees acting as lawyers from statements that should not be privileged because they were made to employees who were acting as businessmen at the time. It is admitted in United Shoe that such employees as house counsel and members of the patent department both serve dual functions. Since degree is the only difference between the two classes it does not seem justifiable to exend the privilege in blanket form to house counsel and totally deny it to members of patent departments. Each case should turn on its own facts.[19]

## PLAINTIFF'S MOTIONS

■ Plaintiff, American Cyanamid, moves under Rule 34 to obtain documents written by one Peverill, an employee in the patent department of defendant, Hercules Powder Company. Defendant has asserted that the cloak of the attorney-client privilege protects those documents (in this situation Hercules would be the client and Peverill the attorney). The Court rejects Hercules' position since it holds that Peverill was not acting as an attorney when he executed the papers. While he was a member of the District of Columbia bar, Peverill was not admitted to the local bar in the State of Delaware. This fact alone does not conclusively demonstrate that Peverill was not acting as an attorney, but it is highly probative of the fact. A careful reading of each document, however, compels the Court's determination. The memos do not demonstrate that Peverill has applied law to the facts supplied to him by Hercules employees, or has prepared these papers in order to defend or assert a claim in court; these are the normal tasks of attorneys. The memo of June 28, 1957 is a mere listing of patents for information sake having to do with the manufacture of certain resins. The memo of May 10, 1960 is an infringement study of the Hercules patents in relation to the Cyanamid patent. Finally, the document dated June 26, 1957 is a listing of prior art in the resin field. None of these papers evince Peverill was acting as a lawyer.[20] As Judge Leahy said of

---

19. Cf. United States v. Vehicular Parking, 52 F.Supp. 751 (D.Del.1943).

20. This Court does not mean to suggest that if outside counsel were performing the same tasks they would not be "acting as lawyers". That question is not before the court. However, the "mere physical proximity of house counsel [this

employees in patent departments in the Zenith case, "they do not 'act as lawyers' * * * even [in] the general application of patent law to developments of their companies and competitors." To allow the invocation of the privilege here would not further its underlying policy of encouraging full disclosure but only would subvert the liberal discovery procedures of the Federal Rules.

■ The only question that remains is whether plaintiff has shown good cause as required by Rule 34. What constitutes good cause is in large part a factual question. In the spirit of the Federal Rules, however, the term should be accorded a liberal construction.

■ Here it is alleged and uncontroverted that the documents are relevant. It seems clear that their production will aid plaintiff's preparation, in that, the documents may show that defendant did, or did not, consider plaintiff's patent an obstacle to the commercialization of defendant's resin compositions. Moreover, since this information will be gathered in some manner in the near future, to allow production enables plaintiff to ferret out the real issues now instead of later.

Plaintiff's motion under Rule 34 is granted. Because defendant's objections to questions propounded rest on the same grounds of privilege, plaintiff's motion to compel answers and continuation of the examination is granted.[21]

### DEFENDANT'S MOTION

■ Defendant moves pursuant to Rule 34 for an order to produce certain letters written by outside counsel to Cyanamid, as well as papers executed by members of the latter's patent department.

The first letter, dated March 23, 1960, was from John Kelton, a New York attorney, to Mr. Evans Kahn of American Cyanamid. It analyzes whether employment of resins by the Keim patents in producing wet strength paper infringed the claims of the Daniel patent. The other letter, dated July 22, 1960, is a similar analysis by John Hoxie another New York attorney.

A close reading of these documents indicates that they are not protected by the attorney-client privilege. These letters do not in any way rest on confidential information disclosed by the client in order to obtain legal advice. They are an analyses of patents, the claims therein and the products manufactured thereunder. The Court takes this to be public information on file in the patent office. As Judge Wyzanski said in the United Shoe case, "there is no privilege for so much of a lawyer's letter, report or opinion as relates to a fact gleaned from * * * a public document such as a patent."[22] Since these letters rest entirely on such documents they are not, in any way, protected by the attorney-client immunity.

Plaintiff apparently concedes that all opinions rendered by members of the patent department are outside the cloak of the attorney-client privilege. Also, plaintiff does not contend that the opinions called for by defendant's motion are work-product. In this posture, the Court need only proceed to determine whether defendant has shown good cause as required by Rule 34. Since it is clear that the documents are relevant, and that production will expedite the trial, in accordance with the spirit of the Federal Rules, this Court holds good cause is shown.

Defendant's motion is granted.

Submit orders.

---

applies equally to members of the patent department], and the relative ease with which he could be converted into a privileged sanctuary for corporate records", Simon, supra, note 13 at 973, suggests a basis for distinction.

21. The documents in item E of Schedule A, are not technically covered by plaintiff's motion, and, therefore, the court may not decide whether these papers are appropriate subjects of discovery.

22. 89 F.Supp. at 359.