Robert A. GARRISON, Garrison Manufacturing Co., Inc., a corporation, and Ross Gear and Tool Company, Inc., a corporation (an involuntary plaintiff), Plaintiffs,

v.

GENERAL MOTORS CORPORATION, a corporation, Defendant.

No. 1440-60-EC.

United States District Court
S. D. California,
Central Division.

Jan. 22, 1963.

Harris, Kiech, Russell & Kern, by Ford Harris, Jr., and Donald C. Russell, Los Angeles, Cal., Sheppard, Mullin, Richter & Hampton, Los Angeles, of counsel, by James C. Sheppard and Gordon F. Hampton, Los Angeles, Cal., for Robert Garrison and Garrison Mfg. Co.

Lyon & Lyon, by Richard E. Lyon, Los Angeles, Cal., Barnes, Kisselle, Raisch & Choate, by Arthur Raisch, Detroit, Mich., for General Motors Corp.

CRARY, District Judge.

Plaintiffs seek inspection, under the provisions of Rule 34, F.R.Civ.P., of communications between an officer of defendant General Motors Corporation (hereafter referred to as GMC) and an attorney in the corporation's patent section, as well as communications between attorneys in the patent section and communications between patent section attorneys and corporation employees and representatives of the company's Saginaw Steering Gear Division, hereafter referred to as SSGD.

All of the attorneys in the patent section working in Michigan were members of the Michigan Bar except Mr. Beecher, who was admitted to practice in Indiana and Massachusetts. All but one of the attorneys involved in the company's patent section in Washington, D. C., were members of the Bar of the District of Columbia.

The employees of the corporation at SSGD include the Division Manager, Mr. W. H. Doefner, Mr. C. W. Lincoln, Chief Engineer, Paul W. Wysong, Senior Project Engineer, and H. A. Boehringer, Assistant Chief Engineer. It appears from the affidavit of Mr. Doefner that the above mentioned persons, individually and as a group, took substantial part in the decisions that were made at SSGD on the advice of patent attorneys in GMC patent section. It also appears that Mr. Doefner decided "what course to pursue upon the advice of the attorneys in GM patent section."

Defendant asserts that all the communications in question come within the attorney-client privilege and need not be produced for inspection. Plaintiffs deny that any of the communications are within the attorney-client privilege and contends that all are subject to production and inspection under Rule 34, F.R.C.P.

The parties have stipulated to the issues to be determined, as follows:

1. Are relevant communications, between employee-attorneys in the patent section of a corporation and other employees of the corporation, protected from disclosure because of the attorney-client privilege? In other words, are such employee-attorneys to be classified as attorneys-at-law insofar as the privilege is concerned?

2. Are such communications outside the attorney-client privilege when the attorney involved is a member of the corporation's patent section but not a member of the Bar in the jurisdiction where he is employed? In other words,

is such an employee-attorney to be classified as an attorney-at-law insofar as the privilege is concerned?

3. Are such communications entitled to the protection of the attorney-client privilege when the communications with the attorney come from, or are to, a corporate employee who is not in a position to control the action of the corporation with respect to the advice of the attorney? In other words, is such a corporate employee a "Client", is he the equivalent of the corporation, so that the requirement that there must be a client is met under the rule?

4. Are the communications between the defendant and an attorney-at-law, admitted to the California Bar, practicing in that jurisdiction, and not an employee of defendant, privileged?

The court concludes that the law of California with respect to attorney-client privilege applies in the instant case under the rules as announced by the Ninth Circuit Court of Appeals in the case of Baird v. Koerner, 279 F.2d 623. That case involved the question of whether disclosure by an attorney of the name of his client was a matter within the attorney-client privilege. On page 628 of the opinion, the court quotes from Corpus Juris Secundum, 35 C.J.S. Federal Courts § 131b, as follows:

"On the question of privileged communications, the federal courts follow the law of the state of the forum."

At page 632, the court further observes:

"In summation, we find (1) that because the relationship of client and attorney is created and controlled by the law of the various states; and that such creation and control is recognized, followed, and approved by the federal courts, the nature and extent of the privilege created between

a lawyer and his client by the attorney-client relationship requires the federal courts to follow the state law; * * * (4) that no federal statute forbids the use of the law of the forum state, and that if there is any definite rule set up by federal statute, it requires us to follow the law of the forum state, and (5) any federal 'common law' which may exist does not require us to ignore the forum state law; * * * (7) that each case must stand on its own facts, with the courts balancing the public policy considerations involved, and we hold the law of the forum state should, and does control—here the State of California."

Referring to page 635 of the court's opinion, it is noted that the government urged no attorney-client relationship existed upon the ground, among others, "(b) that the communications (at the first meeting) were from third persons (agents of the taxpayers, not the taxpayers);". The court goes on to say, referring to the second ground which is quoted as (b) above, "The second ground is not well taken in law."

The court concludes that Attorney Beecher, though not a member of the Michigan Bar, might well be engaged in giving legal advice, in the course of professional employment, to other attorneys in the patent section and to persons who would be considered as members of the "control group" of GMC, which communications would be within the attorney-client privilege. There is no showing in the instant case that local authorities in Michigan require admission to the local Bar of attorneys in the GMC patent section who may be giving legal advice. Zenith Radio Corp. v. Radio Corporation of America, D.C., 121 F.Supp. 792 at 794.

Judge Kirkpatrick, in his opinion in the case of City of Philadelphia v. Westinghouse Electric Corporation, 210 F.Supp. 483 (E.D.Pa.1962), discusses the authority of a corporation representative necessary for him to be considered a member of what the court in the instant

case has termed the "control group", as follows:

"Keeping in mind that the question is, Is it the corporation which is seeking the lawyer's advice when the asserted privileged communication is made?, the most satisfactory solution, I think, is that if the employee making the communication, of whatever rank he may be, is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority, then, in effect, he is (or personifies) the corporation when he makes his disclosure to the lawyer and the privilege would apply. In all other cases the employee would be merely giving information to the lawyer to enable the latter to advise those in the corporation having the authority to act or refrain from acting on the advice."

Mr. Doefner, in his affidavit, after describing the job assignments of Lincoln, Wysong and Boehringer, as outlined above, states that Boehringer and Wysong "were responsible to and acting under the authority of C. W. Lincoln as Chief Engineer", who acted under the authority of Doefner, and that Lincoln, Boehringer and Wysong were "authorized to communicate confidential information" from SSGD to General Motors Corporation patent section "relevant to inventions, development and products * * *" re possible infringement, validity, and so forth.

The pending action for alleged infringement was filed by plaintiff on December 29, 1960. Mr. Lincoln's employment terminated as of February 1, 1958, Mr. Wysong terminated March 31, 1962, and Mr. Boehringer terminated December 2, 1952.

If the case of Holm v. Superior Court, 42 Cal.2d 500, 267 P.2d 1025, 268 P.2d 722, is to be followed literally, then any report of an employee to his company which was sent to the company's attorney for use in possible litigation might be urged to be privileged. As stated by Judge Barnes in the Baird case, supra, 279 F.2d at page 632, " * * * [E]ach case must stand on its own facts, with the courts balancing the public policy consideration involved, * * *." See also Greyhound Corp. v. Superior Court, 56 Cal.2d 355 at 396–398, 15 Cal.Rptr. 90, 364 P.2d 266.

In the case at bar, the court concludes that Messrs. Wysong and Boehringer, mentioned hereinabove, in the SSGD should not properly be considered within the "control group" (the client) *insofar as concerns the application of the attorney-client privilege.* Though the members of the "control group" would be considered to be agents of the corporation within the attorney-client privilege, there must be some limitation with respect to this group or communications from all employees of the company who a member of the "control group" might designate to give confidential information for the purposes of obtaining legal advice, or to take a substantial part in certain decisions, would be privileged. This would vest authority in the "control group" to determine those to whom the privilege would apply which could well extend it beyond the purpose for which it was adopted. 65 Yale L. J., 953 at 955 (1956).

In the circumstances, the court determines, insofar as the instant case is concerned, that the officers, directors, department heads of GMC, including Mr. Doefner and Mr. Doefner's assistant, his Chief Engineer Mr. Lincoln, are to be considered members of the "control group" of the defendant corporation insofar as concerns who is to be within the attorney-client privilege, having in mind the other required elements to qualify for said privilege. Mr. Lincoln is included on the theory that he was Mr. Doefner's first assistant and would act for him in his absence. This means that in the circumstances in this case an employee, (not a lawyer), of GMC, the client, not a member of the "control group," is not an agent of the corpora-

tion within the scope of the attorney-client privilege.

The issues presented by stipulation of the parties set forth hereinabove present the further questions of whether the communications involved were made by the client to its attorneys and whether the communications between the attorneys and communications between the attorneys and the client were in the course of professional employment, [see Section 1881(2) Calif. C.C.P.] and were of a confidential nature made by the *client* to enable the lawyer to advise him (City of Philadelphia v. Westinghouse Electric Corp., supra).

■ With respect to the first issue, as noted hereinabove, the court concludes that a relevant communication between employee-attorneys in the patent section and other employees of the corporation, if said employees are within the "control group" as specified above, are within the attorney-client privilege if the communication gives legal advice pursuant to specific confidential inquiry therefor from the *client* or was prepared by the employee-attorney in order to defend or assert a claim in court.

In the case of State ex rel. Florida Bar v. Sperry, 140 So.2d 587, the Supreme Court of Florida held that a "patent attorney" not admitted to practice law in Florida nor in any other state who held himself out to the public in Florida as qualified to advise as to patentability and did so advise, was engaging in the practice of the law, and that was true if the act of advising concerned the infringement of patent rights. The United States Supreme Court in October, 1962, granted certiorari in this case. See also Chicago Bar Association v. Kellogg, 338 Ill.App. 618, 88 N.E.2d 519, holding that rendering of opinions re infringement and enforcement of patents "very definitely" involved the practice of law.

■ The Sperry and Chicago Bar Association cases, supra, are poles apart from the Zenith case, supra, and American Cyanamid Co., v. Hercules Powder Co., D.C., 211 F.Supp. 85, on the question of whether the work of patent attorneys generally constitutes the practicing of law. It is, of course, true that the positions from which the question is viewed by the courts in the above cases are also far apart. It is the opinion of this court that such work does constitute practicing law when patent attorneys act as legal advisors and engage primarily in legal activities, as more particularly set forth hereafter.

In the case of American Cyanamid, supra, Chief Judge Wright considers at length the question of whether attorneys in a corporation patent section are practicing law within the purview of the attorney-client privilege. He cites with approval the case of United States v. United Shoe Machinery Corporation, D. C., 89 F.Supp. 357, and the Zenith Radio Case, supra, quoting from the opinion of Judge Wyzanski in the United Shoe case and the opinion of Chief Judge Leahy in the Zenith case. Chief Judge Wright observes, at page 88 of his opinion, that all disclosures made to a person who primarily devoted his time to business (i. e. members of the patent department) were not privileged and thereafter quotes from Chief Judge Leahy's opinion re attorney-employees of a corporate patent section, as follows:

"At this stage, attorney-employees of the patent departments of RCA, GE, or WE may or may not qualify in specific instances. They do, for example, when in specific matters they are engaged in applying rules of law to facts known only to themselves and other employees of their client-companies, and in preparing cases for and prosecuting appeals in the Court of Customs and Patent Appeals and other like courts of record. They do not 'act as lawyers' when not primarily engaged in legal activities; when largely concerned with technical aspects of a business or engineering character, or competitive considerations in their companies' constant race for patent proficiency, or the scope of public patents, or even the general application

of patent law to developments of their companies and competitors; when making initial office preparatory determinations of patentability based on inventor's information, prior art, or legal tests for invention and novelty; when drafting or comparing patent specifications and claims; when preparing the application for letters patent or amendments thereto and prosecuting same in the Patent Office; when handling interference proceedings in the Patent Office concerning patent applications."

Following the quotation, the court states "This court will follow Judge Leahy's opinion."

■ In the case at bar, the court concludes that the lawyers in the patent section of GMC are not giving legal advice when devoting their time primarily to business and the routine checking of patent records or working on matters largely concerned with technical aspects of a business or of an engineering character. However, where, pursuant to information given to a lawyer in the patent section by a member of the "control group", he receives a specific assignment for research of the records of the Patent Office to obtain information upon which to base an application of the law to the specific facts to be ascertained by said research, the communications to the patent attorney from the client and the inter-patent section communications and reports and advice to a member of the "control group" (client) are within the purview of the attorney-client privilege if the matter involves a specific patent matter in which the client has reason to believe legal advice is necessary, such as where inquiry is made as to a certain patent or application, with respect to litigation, infringement, validity or purchase.

■ Referring to issue No. 2 above, the court holds than an attorney in a corporate patent section who is a member of the Bar of some state, though not a member of the Bar of the jurisdiction where employed, may be an attorney-at-law within the scope of the attorney-client privilege. In referring to "house counsel" as qualifying for the privilege, Chief Judge Leahy, in the Zenith case, supra, 121 F.Supp. at page 794 of his opinion, states:

"Bar membership should properly be of the court for the area wherein the services are rendered, but this is not a sine qua non, e. g., visiting counsel, long distance services by correspondence, pro hac vice services, 'house counsel' who practice law only for the corporate client and its affiliates and not for the public generally, for which local authorities do not insist on admission to the local bar."

This court concludes that lawyers in a corporate patent section are comparable to house counsel though Chief Judge Leahy does not so regard them.

■ With regard to issue No. 3, supra, the court holds, for reasons outlined above, that insofar as concerns the instant case, a relevant communication otherwise entitled to the attorney-client privilege, is not so privileged when the said communication with the attorney is from or to a corporation employee *not* in a position of control, or, as referred to above, as being in the "control group."

■ In deciding issue No. 4, the court rules that a communication, if otherwise privileged, between the corporation and an attorney admitted to the California Bar and practicing law in California (not a corporation employee), is within the attorney-client privilege. This would be a communication between the corporation "control group" and an "outside attorney", which the court believes would be privileged if the communication meets the other tests referred to above as being in the course of professional employment. Chief Judge Leahy, in discussing attorney-client privilege in Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792, cited above, at page 794 of his opinion, states, " '[o]utside counsel' for corporations almost invariably * * * qualify under this requirement." The

court in the Cyanamid case, supra, held that communications from outside counsel were not privileged because they were opinions on facts gleaned from public documents. This court would not go that far.

Both parties assert that all of the communications involved are relevant and the court finds good cause is shown as required by Rule 34.

The court wishes to state that it has carefully considered the opinion in Radiant Burners, Inc. v. American Gas Association, 207 F.Supp. 771; 209 F.Supp. 321 (N.D.Ill.1962), but is not in accord with the conclusion as announced therein. In the instant case, no counsel have taken the position that a corporation is not entitled to the attorney-client privilege in all circumstances but counsel differ on the standards to be applied in the determination of when the privilege exists, particularly with respect to communications to or from lawyers in a corporate patent section.

The application of the rulings of the court set forth above in this opinion may not be simple. From a perusal of the communications involved, the court notes that defendant personnel in the "control group" conferred with plaintiff Garrison re the patent here involved, the application therefor, and the renewal thereof in August, 1951, and again in April, 1958. Any communications concerning what transpired at these conferences would not appear to the court to be within the attorney-client privilege by reason of the presence of the plaintiff. There are some of the communications which do not appear to be concerned, directly, at least, with the matters involved in the pending litigation or requests by the defendant company for application of the law to the results of search as to patents involved.

In order that the pending motion may be finally determined, it is ordered that defendant apply the standards as outlined above and produce for plaintiffs' inspection such communications, or portions thereof, listed in plaintiffs' motion as defendant concludes are not within the attorney-client privilege, that defendant on or before January 31, 1963, serve and file a list of communications, or portions thereof, so produced for the plaintiffs' inspection. The court will, on receipt of the said list, promptly rule on the question of whether the communications involved which are not so listed are to be deemed within the attorney-client privilege.