CONGOLEUM INDUSTRIES, INC.

v.

G A F CORPORATION.

Civ. A. No. 41761.

United States District Court
E. D. Pennsylvania.

Nov. 14, 1969.

———◆———

Lewis H. Van Dusen, Jr., Drinker, Biddle & Reath, Philadelphia, Pa., Eben M. Graves, Brumbaugh, Graves, Donohue & Raymond, Robert MacCrate, Sullivan & Cromwell, New York City, for plaintiff.

Joseph W. Swain, Jr., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Stanton T. Lawrence, Jr., Pennie, Edmonds, Morton, Taylor & Adams, New York City, for defendant.

## OPINION AND ORDER

HANNUM, District Judge.

This is an action arising under the patent laws of the United States and at this stage of the proceedings important questions concerning discovery are raised. Plaintiff, Congoleum Industries, Inc., is suing the defendant, GAF Corporation, for infringement of its Patent Nos. 3,293,094 and 3,293,108 pertaining to chemically embossed foam products and a process for manufacturing them. It is alleged that plaintiff's rights are infringed by reason of GAF's manufacture and sale of chemically embossed foam vinyl floor coverings which are allegedly covered by the above mentioned patents.

Plaintiff has made a motion pursuant to Fed.R.Civ.P. 34, for the production of specific documents in defendant's possession. Both the relevancy of these documents and good cause for their production are admitted, but discovery is resisted on the grounds of attorney-client privilege.

Prior to the commencement of this action, defendant became aware of the fact that plaintiff had filed patent applications in the United States and foreign countries relating to embossed foamed floor coverings. Since both plaintiff and defendant were competing commercially and there existed a potential conflict between the possible patent rights of parties, the Ruberoid Company (defendant's predecessor) designated certain individuals who, as a group, were to investigate this possible conflict. The relevant members of this group were Mr. Thomas A. Dent (Vice-President of Operations of the Ruberoid Co.), Mr. J. Stokes Clement (Vice-President and General Manager of the Sandura Division of the Ruberoid Co.), Mr. Edward R. Erb (Director of Research of the Sandura Division of the Ruberoid Co.), and Mr. Philip S. Bettoli (Director of Research of the Ruberoid Co.) Other persons, namely, Mr. Russell Jones (Vice-President for Production and Research of the Sandura Company Division until its acquisition by Ruberoid) and Mr. J. V. Van Akin (Mr. Dent's predecessor) were also consulted in order to obtain their advice and opinions. The documents in question represent the correspondence between and among the above parties and James W. Laist, Esquire, and Mr. Kenneth P. Synnestnedt,

a registered patent agent, both of whom were consulted as to these potential patent problems.

■■ Initially, plaintiff contends that many of the thirty documents are not privileged because a client is not seeking legal advice, nor is a lawyer giving advice relating to information supplied him by his client. Basically, such a privilege only exists if: (1) the asserted holder of the privilege is, or sought, to become a client and (2) the person to, or by whom, the communication was made (a) is a member of the bar of the court or his immediate subordinate and (b) is acting as a lawyer in connection with this communication, Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D.C. Del. 1959). It is conceded that Mr. Kenneth P. Synnestnedt is a patent agent and not an attorney at law. However, this by itself is not conclusive because the attorney-client privilege also extends to the agents or immediate subordinates of the attorney. Zenith Radio Corp. v. Radio Corp. of America, *supra;* 8 Wigmore, Evidence § 2301 (3d Ed. 1940). It is apparent from an examination of the documents in question and other information[1] that Mr. Synnestnedt was indeed acting as an agent for the lawyers who employed him and from whom the defendant was seeking advice. Mr. Synnestnedt's position is distinguishable from that presented in United States v. United Shoe Machinery Corporation, 89 F.Supp. 357 (D.C.Mass.1950) where the privilege was held not to apply to staff members employed in a corporation's patent department. Mr. Synnestnedt was employed by and under the personal supervision of outside counsel whom he represented in discussions with the various individuals involved in the study group.

However, the question still remains as to whether the communications between the attorneys or their agents and the above named individuals constituted correspondence between an attorney and the corporate client or merely between an attorney and the employees of the corporate client. Both plaintiff and defendant agree that the controlling test, as stated by Judge Kirkpatrick, is that:

"Keeping in mind that the question is, Is it the corporation which is seeking the lawyer's advice when the asserted privileged communication is made?, the most satisfactory solution, I think, is that if the employee making the communication, of whatever rank he may be, is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority, then, in effect, he is (or personifies) the corporation when he makes his disclosure to the lawyer and the privilege would apply. In all other cases the employee would be merely giving information to the lawyer to enable the latter to advise those in the corporation having the authority to act or refrain from acting on the advice." City of Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 483, 485 (E.D. Pa.1962).

■ Thus, only where the communication for which privilege is claimed is based on disclosure from a member of the control group of the corporate client to its attorney does the privilege apply. Plaintiff argues that only Mr. Dent and Mr. Clement were vested with the authority to reach a final decision as to the problems posed by the potential patent conflict, so that they alone constituted the control group and thus, that any communications which the other individuals (Mr. Erb, Mr. Bettoli, Mr. Jones and Mr. Van Akin) authored or received are not entitled to protection under the attorney-client privilege.

---

1. See Raymond H. Synnestnedt's Affidavit.

■ Plaintiff's point is well taken. Mr. Erb was not in a position to control the final decisions that may have proved to be necessary[2]. Defendant, however, contends that Erb took a substantial part in making decisions, or at least was within the control group by virtue of his inclusion among the individuals designated by the Ruberoid Company to study the patent situation[3]. Nevertheless, the fact remains that Erb merely aided in furnishing technical information which, along with other information, was used as a basis for any decisions that were reached. In other words, Erb held an advisory as opposed to a decision making position. His responsibility was not to act upon advice but merely to supply advice in his particular area.[4]

■ Admittedly, Erb was often in contact with the attorneys but his position was merely analogous to that of a witness who supplies information within his knowledge to an attorney so that the latter can better advise his client. Similarly, the mere fact that Erb was a designated member of the study group does not, in and of itself, establish that he was within the legally defined control group. The significant criteria are not the labels or titles used to designate various individuals, but rather the actual duties and responsibilities which are in fact delegated to these individuals. Such limitations must be placed upon the designation of the control group, otherwise, that group itself would be vested with authority to determine those to whom the privilege would apply, thus, extending the concept beyond the purposes for which it was adopted. Garrison v. General Motors Corporation, 213 F.Supp. 515 (S.D. Cal. 1963). Here, regardless of the fact that Erb was a member of the study group, he did not possess the ultimate decision making responsibility. Thus, the fact remains that he was not one of those individuals who personified the defendant as a client so as to fall within the corporate control group as defined in the *Westinghouse* case.

Having arrived at the conclusion that Mr. Erb was not a member of the corporate control group, it clearly follows that neither Mr. Bettoli, Mr. Jones, nor Mr. Van Akin were members of that group. Mr. Bettoli possessed substantially the same functions as Mr. Erb. Further, it is admitted that Mr. Jones and Mr. Van Akin were not even within the study group and were merely consulted for any relevant opinions they may have had. Thus, the twenty-two documents which were either written or received by these individuals are not protected from discovery by the attorney-client privilege because they did not constitute communications to or from the individuals who personified the corporate client. This finding, of course, precludes any discussion concerning the issue of waiver of the privilege.

In reviewing the remaining eight documents, it is apparent that they fall into two general groupings: (1) opinions and reports from Mr. Synnestnedt to Mr. Clement (documents 654, 658 and 696); and (2) opinions from Mr. Synnestnedt directed to Mr. Laist and from Mr. Laist to Mr. Synnestnedt as well as handwritten notes of Mr. Synnestnedt (documents 661, 663, 722, 723 and 729).

■■ While the documents in group (1) constitute correspondence from an attorney to his client, plaintiff contends that they do not contain legal advice based upon material that came from the client. In other words, plaintiff argues that the advice was given on the basis of public information that was available, rather than on confidential information supplied to the attorney by the client in seeking legal advice. The basis for the

2. See Edward R. Erb's Deposition of September 24, 1968; page 500, line 15; page 501, line 3; page 502, lines 2–20.

3. See Thomas A. Dent's Affidavit.

4. Erb's Deposition, *supra*; page 512, lines 10–22.

attorney-client privilege is to protect communications by the client seeking legal assistance and it does not extend to opinions of counsel which are unrelated to any such communication by the client, American Cyanamid Co. v. Hercules Powder Co., 211 F.Supp. 85 (D.C.Del.1962); United States v. United Shoe Machinery Corporation, *supra*. An examination of these documents reveals that they do indeed refer to basically public information or, at the most, indicate a general summary of business information obtained from individuals who do not personify the corporate client. These documents represent a report of general corporate business decisions as opposed to legal advice based upon confidential information and for this reason are without the asserted privilege.

██ Finally, defendants have indicated that some of the documents were properly withheld on the additional ground that they constitute work product of an attorney. The only documents to which such a claim could possibly refer are those in group (2) which are communications between Laist and Synnestnedt. Disclosure of the documents in this group, with the exception of documents 722 and 723 relating to public information, would constitute an invasion of the mental processes of an attorney working on a legal problem. Plaintiff, however, contends that these documents were not prepared with an eye toward litigation. However, if the prospect of litigation is identifiable because of specific claims that have already arisen, the fact that litigation is still a contingency at the time the document is prepared has not been held to render this doctrine inapplicable. Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968). Thus, documents 661, 663 and 729 are not properly discoverable.

## ORDER

And now, this 14th day of November, 1969, after argument on Plaintiff's Mo-

tion For Production of Documents, it is hereby ordered that:

(1) Plaintiff's Motion is granted as to documents 653, 654, 658, 659, 666, 667, 668, 670, 673, 679, 681, 682, 683, 685, 686, 688, 689, 692, 693, 696, 699, 710, 712, 718, 721, 722 and 723.

(2) Plaintiff's Motion is denied as to documents 661, 663 and 729.