**HOGAN et al.**
v.
**ZLETZ**
v.
**BAXTER et al.**
v.
**NATTA et al.**
No. 6475–C.

United States District Court
N. D. Oklahoma.

March 30, 1967.

Supplemental Opinion June 26, 1967.

Martin, Logan, Moyers, Martin & Conway, Tulsa, Okl., for Natta and others.

R. B. McDermott, Tulsa, Okl., L. Malcom Oberlin, Patent Department Phillips Petroleum Co., Bartlesville, Okl., for Hogan and others.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

### Background Facts

I

This is an ancillary proceeding under Title 35, U.S.C., Section 24, for production of documents pursuant to Rule 34, F.R.Civ.P., 28 U.S.C.A., by Natta et al. assignor to Montecatini Societá Generale per L'Industria Mineraria e Chinica and Montecatini Edison S.p.A. (hereinafter called Natta et al), the senior party in Interference No. 89,634. Natta et al. has an Italian application filing date of June 8, 1954. The Interference action now pending before the Board of Patent Interference of the United States Patent. Office involves three junior parties and their assignees listed in the chronological order of their application filing dates: August 19, 1954—Baxter et al assignor to E. I. duPont de Nemours & Company (hereinafter called Baxter et al); October 15, 1954—Zletz assignor to Standard Oil Company of Indiana (hereinafter called Zletz); and, January 11, 1956—Hogan and Banks assignor to Phillips Petroleum Company (hereinafter called Hogan et al).

II

The priority question before the Board pertains to the subject matter polypropylene which is defined by the interference count as follows: "Normally solid polypropylene, consisting essentially of recurring propylene units, having a substantial crystalline polypropylene content." Following the declaration of interference on September 8, 1958, the patent interference proceedings have finally reached the trial stage in which the testimony-in-chief of the three junior parties (Baxter et al, Zletz, and Hogan et al) has been concluded. This testimony has included an attempt by the junior parties to rebut the presumption that they made their inventions in the chronological order of their respective filing dates. Pursuant to Patent Office Rule 251(a) (37 C.F.R. 1.251(a)) Natta et al now has the opportunity to attack the sufficiency of the testimony-in-chief and the instant Motion seeks the documentation favorable to its priority date from the files of the juniormost party for use in examination of the assignees' employees or re-employees. The movant is foreclosed from proving an invention date earlier

than the Italian application filing date of June 8, 1954, because of its reliance on a foreign patent. Title 35, U.S.C., Sections 104, 119.

### III

The Patent Office Board of Patent Interferences has no procedure for ordering or enforcing the production of documents and the Board has denied the request of Natta et al to extend its testimony period. The order denying the extension of the testimony period was tempered by a reservation couched in the following language: " * * * without prejudice to the resetting of a limited testimony period for the sole purpose of permitting Natta et al to take the testimony only of those witnesses who are ordered to testify as a result of the specific Court proceedings * * * " The specific court proceedings referred to in this order are the three Rule 34 district court proceedings instituted by Natta et al (see Paragraph IV infra).

### IV

The Rule 34 Motion filed herein is directed to the juniormost parties Hogan et al and similar Rule 34 Motions are before the Courts in the Northern District of Illinois, Eastern Division, against Zletz, and the District of Delaware, against Baxter et al. On August 31, 1966, the Court held a hearing which resulted in the decision to overrule the Motions of Hogan et al to quash the summons on grounds of improper service, improper process, lack of jurisdiction over the parties and subject matter, and failure of Movants, Natta et al to state a cause of action. Judge Layton reached the same conclusion in the concurrent Rule 34 proceeding against Baxter et al in the District of Delaware. See In Re Natta, 259 F.Supp. 922 (D.Delaware–1966).

### V

The instant proceedings are now before the Court on the merits of the Natta et al Rule 34 Motion and counter Rule 34 Motion by Hogan et al. The latter Motion is germane only if the Court decides in favor of Natta et al whereupon the counter-motion is applicable by force of the pertinent stipulation. Two separate stipulations have been filed herein which delineate the scope of production of about eighty documents. The effect of the stipulations is to present this proceeding principally as one involving issues of law only, and to eliminate further expense and delay which would be inherent in the appointment of a technical adviser or by reference to a Master.

### VI

The eighty documents involved have been categorized for the presentation of arguments and authorities pertinent to the issues herein as follows:

Group 1—Opinions of legal counsel on legal questions.

Group 2—Communications by the client to counsel to obtain legal opinions.

Group 3—Working papers prepared by counsel for use in the prosecution of legal proceedings.

Group 4—Documents prepared by lay personnel, at the direction of counsel and for use of counsel.

Group 5—Documents related to preparation of the preliminary statement in the pending interference.

### *Issues*

### VII

The dispositive issues presented to the Court for decision at this time under the stipulations are whether the questioned documents are immune from the Rule 34 Motion because of the attorney-client privilege or the "work product" immunity of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 541 (1947). Hogan et al interposes the attorney-client

privilege as a bar to the production of documents in Groups 1 and 2, and "work product" immunity to documents in Groups 3, 4, and 5 (see paragraph VI supra).

*Law and Discussion*

## VIII

■■ As an exception to the general rule that all persons having knowledge of the facts are required to testify, the attorney-client privilege should be strictly construed absent a sound and compelling reason to recognize it. The privilege is strictly construed where it would suppress the truth in violation of the general rule that all persons having knowledge of the facts are required to divulge them. It is recognized where it would be vital to the freedom of consultation of lawyers with their clients. 8 Wigmore, Evidence 2291 (McNaughton rev. 1961); In Re Colton, 201 F.Supp. 13 (S.D.N.Y.–1961), affirmed 306 F.2d 633 (1962), cert. denied 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed. 2d 499, 1963). In Radiant Burners, Inc. v. American Gas Assn., 320 F.2d 314 (Seventh Cir.–1963), cert. denied 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 the Court held that the corporation had a right to assert the attorney-client privilege although that privilege "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle."

## IX

■ Any detailed discussion of the attorney-client privilege must begin with a citation from Wigmore on Evidence, 8 Wigmore, Evidence 2292 (McNaughton rev. 1961): "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." If any one of these essentials fails, then the privilege is not well taken. Radiant Burners, Inc. v. American Gas Assn., supra.

## X

At the outset it should be noted that under the Wigmore essential elements we are vitally concerned here with the privilege as it relates to the nature of the communication and the relationship and position of the participants. Under the Wigmore definition the communication must be made by or to a client, and the Radiant Burners case permits the Court to consider the assignee of the Hogan and Banks patent, Phillips Petroleum Company, a large corporate enterprise, as a client. The locus of the documents requested by Natta et al is the Phillips Petroleum Company which has within its corporate structure a patent department which includes lawyers and non-lawyers. The duties of these personnel encompass for the most part the procurement and exploitation of patents, preparation and prosecution of patent applications, conduct of interference proceedings, preparation of patent license agreements and enforcement of patents and licenses in litigation before the Courts.

## XI

No issue has been raised herein as to the applicability of federal or state law on the questions relating to attorney-client privilege. 95 A.L.R.2d 320 Annot: Federal courts as following law of forum state with respect to privileged communications.

## XII

As far as the attorney-client privilege question is concerned, Natta et al places principal reliance on the following cases: American Cyanamid Co. v. Hercules Powder Co., 211 F.Supp. 85 (D.Delaware-1962); United States v. United Shoe Machinery Corp., 89 F.Supp. 357 (D. Mass.-1950); Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D.Delaware - 1954); Georgia - Pacific Plywood Co. v. United States Plywood

Corp., 18 F.R.D. 463 (S.D.N.Y.-1956). Paper Converting Machine Co. v. FMC Corp., 215 F.Supp 249 (E.D.Wisc.-1963), was also cited and it is in accord with United Shoe and Georgia-Pacific Plywood. In *American Cyanamid* the court followed the Zenith Radio case and granted discovery and the motion to compel answers. The Court mentioned inter alia that members of the patent department and house counsel all serve dual functions as businessmen or technical advisers and as lawyers and refused to treat the analyses of patents as confidential. In *United Shoe* Judge Wyzanski placed the documents in four classes; sustaining the privilege in part as to one class which involved documents to or from outside lawyers who were giving legal advice, and denying the privilege for the other classes as to house counsel, members of the patent department and to their working papers. In *Zenith Radio* Judge Leahy gave little credence to "work product", described the ambit of "acting as a lawyer", and examined several documents as guidelines for a reference to a Master for examination of the remainder. In *Georgia-Pacific Plywood* the privilege was upheld where the Director of the Patent Department was termed house counsel rather than a patent lawyer. The Court looked to the nature of the communication in arriving at the conclusion that the mere fact a lawyer participant in the communication is house counsel does not mean that he is automatically disenfranchised from exercising the privilege.

### XIII

As far as Hogan et al are concerned, the following cases are claimed to be of substantial import and controlling on the privilege question: Ellis-Foster Company v. Union Carbide & Carbon Corp., 159 F.Supp. 917 (D.N.J.-1958); International Min. & Chem. Corp. v. Golding-Keene Co., 162 F.Supp. 137 (W.D.N.Y.-1958); and Garrison v. General Motors Corp., 213 F.Supp. 515 (S.D.Calif.-1963). In *Ellis-Foster* the plea of privilege was sus-

tained following a discussion of United Shoe, Zenith Radio and Georgia-Pacific Plywood. The thesis of Judge Leahy in Zenith Radio with reference to technicians who are both lawyers and scientific specialists was refuted. The Court also opined that the admission of non-lawyers in patent practice should not destroy the privilege nor should a lawyer ipso facto be deprived of privilege in every field in which he operates so long as a patent prosecution is involved. In *International,* insofar as the case discussion is relevant to the issues at bar, the opinion was expressed that an attorney is not automatically denied the privilege if he is not a member of the bar of the state of residence and, therefore, the Defendants were entitled to claim the privilege asserted. *Garrison* is the "control group" case wherein the Court made three findings which are pertinent herein: (1) Certain employees (two engineers) were not within the "control group" of high level corporate employees and the attorney-client privilege was not applicable to their communications with the patent attorneys. Communications with other officers, directors and department heads not involving routine record checking or research of Patent office records, were with members of the "control group" and within the privilege. (2) A corporate patent attorney is equated with "house counsel" and is an attorney at law within the scope of privilege. (3) Communications between corporation and "outside attorney" are almost invariably entitled to the attorney-client privilege.

### XIV

The synthesis which results from a comparison and examination of the foregoing authorities is that the documents in question cannot be approached on an all or nothing basis. Any blandishment to the contrary notwithstanding, the Court is faced with the proposition that the documents must be examined one by one and page for page for any earmarks which would tend to indicate that they

are not within the attorney-client privilege for lack of one of the Wigmore essential elements. Under the foregoing privilege authorities cited by counsel, the nature of the communication as to being legal or non-legal must be carefully scrutinized as well as the position of the participant non-attorney within the corporate structure. The dualism involved in the activities of house counsel and patent counsel makes it important that the Court carefully consider the nature of the communication. The communicant may occupy a "control group" position which would render the communication privileged, or the communicant may be a lower level corporate employee and an otherwise privileged communication would be subject to disclosure. Therefore, in the interest of fairly weighing the competing interests in this litigation and of applying the authorities with any degree of correctness, the Court must order the disputed documents in Groups 1 and 2 filed with the clerk for an in camera inspection and ruling.

## XV

■■ Even though the documents in question are not within the attorney-client privilege, production may also not be proper if they fall within the "work product" rule of Hickman v. Taylor, supra. Hogan et al has chosen to rely on the "work product" for the categories of documents in Groups 3, 4, and 5. The Court will not launch into an extended discussion of this landmark case and its oft-quoted passages except to say that the United States Supreme Court has given the lawyer's "work product" a qualified immunity from discovery. Therefore, the burden is on Natta et al to establish adequate reasons to justify the production and this depends essentially upon a showing of necessity from the surrounding circumstances of the case. In the case at bar the necessity would include the location of relevant facts and documents to prepare for the examination of witnesses.

## XVI

■ It is clear that an attorney's "work product" is a separate consideration apart from the attorney-client privilege. Radiant Burners, Inc. v. American Gas Assn., supra; Hickman v. Taylor, supra.

## XVII

■ One of the most important considerations in measuring the necessity for production of "work product" materials is whether the information in question is otherwise available to the party seeking discovery. Natta et al has clearly established that the information is not otherwise available in Appendix A to the Memorandum of the Party Natta et al etc., as filed August 22, 1966. Natta et al is entitled to a patent containing the interference count unless at least one of the junior parties proves a state of facts acceptable to rebut the senior party's presumptive right to the interference count. Natta et al cannot go behind the June 8, 1954, filing date and this is the only opportunity Natta et al will have to present evidence under the Patent Office rules. To attack the testimony-in-chief of the junor parties, Natta et al must attack the sufficiency of this testimony, and there is no other way for this attack to be made other than by showing the invalidity of the documentation tending to prove an invention date earlier than June 8, 1954, from the files of the junior parties.

## XVIII

■■ It is also pertinent to point out that the theme of public interest in patents runs throughout the entire course of the instant proceedings. The communications by an applicant to his counsel concerning the preparation and prosecution of a patent application seem to be vested with some public interest, are analogous to communications made to a tax attorney for use in preparing a tax return, and the privilege is abrogated by violation of one of the essential elements

of the privilege which requires that the communication be made in confidence for the use of the attorney only. It is true, as Natta et al points out, that the public has an interest in patents, and in the full disclosure requirements of our patent laws, but the Court cannot agree that the attorney-client privilege cannot be asserted herein because of this overriding public interest. The public interest is not an absolute unyielding mandate, but rather a discretionary function of the Court to be weighed along with other factors in determining the applicability of the privilege and the "work product" rule. The Court finds the following language of Judge Leahy persuasive insofar as the "work product" question is concerned herein: "Documents originating in defendants' patent departments—except those going to "house counsel" or outside counsel and qualifying under their derivative privileges—are not ordinarily "work product". Seldom, if ever, are patent department employees engaged in actual preparation for a trial of the required type." Zenith Radio, supra, 121 F.Supp. at page 795. Also see Clevite Corp. v. Beckman Instruments, Inc., 257 F.Supp. 50 (S.D.Calif.-1966).

### XIX

Therefore, the Court also finds and concludes that the documents contained in Groups 3, 4, and 5 must be produced and filed with the clerk for an in camera inspection and ruling.

### XX

Counsel for Natta et al will prepare an order in accordance with the Court's ruling on Groups 1, 2, 3, 4, and 5 and submit the same to the Court for entry and filing herein. The Court will file a Supplemental Memorandum Opinion after the documents have been considered.

## SUPPLEMENTAL MEMORANDUM OPINION

The Court has proceeded, in camera, to review the documents submitted by Ho-

gan et al. in accordance with the Memorandum Opinion of March 30, 1967. 68 documents have been presented for consideration, 13 of which have been withheld from disclosure because of claimed attorney-client privilege, and the remaining 55 are alleged to be within the qualified immunity of "work product." Accompanying the documents is the affidavit of L. Malcom Oberlin, an attorney with the Patent Division of Phillips Petroleum Company, which states the name and organizational job title of personnel employed in the Patent Division, the Research and Development Department and the members of the "Patent Committee." Also, the Court has been provided with a list of the 68 documents by date, type, author, addressee, and the disposition of any copies of the documents in question. In preparing this Opinion the Court has placed principal reliance on the document itself, and it does not appear that any copies of the documents were shown to "strangers" as they are defined in the Zenith Radio case at page 795.

## ATTORNEY-CLIENT PRIVILEGE
### (Documents 1 through 13 incl)

None of the documents withheld by reason of a claimed attorney-client privilege involve outside counsel. Only house counsel are involved. Communications between attorneys in the Patent Division of Phillips Petroleum Company are not considered to be communications between attorney and client. The manager and assistant manager of the Patent Division and the manager and assistant manager of the Research and Development Department and the members of the Patent Committee of Phillips Petroleum Company are deemed to be within the "control group" of said company. A research chemist and a group leader in the Research and Development Department of Phillips Petroleum Company are not deemed to be within the "control group" of said company. Therefore, communications between an attor-

ney and the managers and assistant managers above mentioned and the Patent Committee are between attorney and client and are privileged if they constitute legal advice.

 To facilitate the review of documents 1 through 13, the Court has assigned the following subjects to the applicable documents throughout this Opinion: (a) date; (b) type of document; (c) author (title) to addressee (title); and (d) decision.

1. (a) May 14, 1952
 (b) Memorandum
 (c) J. Paul Jones (attorney—asst. mgr. patent division) to (specific addressee-client unidentified)
 (d) This memorandum is not privileged because it does not appear to be a communication between attorney-client.

2. (a) March 22, 1954
 (b) Letter (intra-office)
 (c) Martin A. Ryan (senior attorney, patent division) to J. Paul Jones (supra)
 (d) This letter is from an attorney to a client (control person) and contains legal advice. It is, therefore, privileged.

3. (a) March 19, 1952
 (b) Recommendation Sheet (intra-office)
 (c) (specific author not identified in document) to (document shows several initials and names)
 (d) This Recommendation Sheet is not privileged because it appears to be a communication between chemists and the Patent Committee. Thus, it is between a control person and chemists and the attorney-client relationship is not present.

4. (a) June 5, 1952
 (b) Letter (intra-office)
 (c) J. A. Young (manager, patent division) to J. P. Hogan (group

leader-research division) and R. L. Banks (research chemist)
 (d) This intra-office letter is not privileged. It is between the manager of the patent division and chemists or between a control person and chemists. The attorney-client relationship is not present.

5. (a) June 3, 1952
 (b) Recommendation Sheet (intra-office)
 (c) (specific author not identified in document) to (document shows several initials and names)
 (d) This Recommendation Sheet is not privileged because it appears to be a communication between chemists and the Patent Committee. Thus, it is between a control person and chemists and the attorney-client relationship is not present.

6. (a) July 22, 1952
 (b) Letter (intra-office)
 (c) J. A. Young (supra) to J. P. Hogan (supra) and R. L. Banks (supra)
 (d) This letter is not privileged. It is between a control person and chemists and thus, the attorney-client relationship is not present.

7. (a) December 7, 1953
 (b) Recommendation Sheet (intra-office)
 (c) (specific author not identified in document) to (document shows several initials and names)
 (d) This Recommendation Sheet is not privileged because it appears to be a communication between chemists and the Patent Committee. Thus, it is between a control person and chemists and the attorney-client relationship is not present.

8. (a) June 17, 1954
 (b) Comments

(c) George N. Cade (senior attorney) to (specific addressee-client unidentified in document)

(d) This memorandum is not privileged because it does not appear to be a communication between attorney-client.

9. (a) January 5, 1956

(b) Letter (intra-office)

(c) George N. Cade (supra) to J. A. Young (supra)

(d) This letter is from an attorney to a control person and contains legal advice. It is, therefore, privileged.

10. (a) January 6, 1956

(b) Letter (intra-office)

(c) George N. Cade (supra) to J. A. Young (supra)

(d) This letter is from an attorney to a control person and contains legal advice. It is, therefore, privileged.

11. (a) December 19, 1957

(b) Notegram (intra-office)

(c) D. J. Quigg (attorney—asst. mgr. patent division) to George Cade (supra)

(d) This Notegram is from an attorney to a control person but does not contain legal advice.

12. (a) April 19, 1960

(b) Letter (intra-office)

(c) E. Eugene Innis (senior attorney) to J. A. Young (supra)

(d) This intra-office letter is from an attorney to a control person and contains legal advice. It is, therefore, privileged.

13. (a) September 22, 1955

(b) Letter (intra-office) with penciled notes

(c) Louis N. French (senior attorney) to J. A. Reid (mgr. research division) and S. S. Prentiss (director-patent liaison)

(d) This letter is from an attorney to a non-control person. The attorney-client privilege is not present. The letter is not privileged.

## WORK PRODUCT OF AN ATTORNEY
(Documents 14 through 68 incl)

The "work product" rule announced in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, extends only to memoranda, statements, and other information made or obtained by an attorney "in the course of preparation for possible litigation after a claim has arisen." In Hickman, such type material was not privileged under the attorney-client privilege because it did not constitute communications or matters passing between an attorney and client.

There is no indication from documents 14 through 68 inclusive that any of them were prepared or obtained in preparation for possible litigation after a claim was recognized as having arisen. They would therefore not be "work product."

Natta et al has amply shown the necessity for the type of information sought herein and has shown that such information has not been revealed to them and is not available to them from any other source.

Moreover, in many instances the document is not the work of an attorney or shown to have been obtained by an attorney.

Therefore, the Court concludes without exception that documents 14 through 68 are not "work product," that good cause for their production has been shown, and they are ordered produced for inspection pursuant to the Court's Memorandum Opinion and Rule 34, F.R.Civ.P., 28 U.S.C.A.

Counsel for Natta et al will prepare an Order in accordance with this Supplemental Memorandum Opinion and submit the same to the Court for entry and filing

herein. The Court is returning the 68 documents to the Clerk with instructions to retain the same in the vault pending further proceedings and Order of the Court.