618

Chicago Bar Association et al., Appellees, v. Wilbur Fiske Kellogg, Appellant.

Gen. No. 44,716.

Opinion filed October 31, 1949. Released for publication November 21, 1949.

CLOYES & CAVENDER, of Chicago, for appellant.

CHARLES LEVITON, of Chicago, for appellees; CASPER WILLIAM OOMS, WERNER W. SCHROEDER, ALBIN C. AHLBERG, CLARENCE E. FOX, and THEODORE C. DILLER, all of Chicago, of counsel.

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

Plaintiffs, The Chicago Bar Association, and sixteen attorneys, members of the committee on unauthorized practice, filed their complaint in the superior court of Cook county against defendant seeking to restrain him from the unauthorized practice of law. From a decree

granting in part the relief prayed, defendant appeals, and from that part of the decree denying the relief, plaintiffs cross-appeal.

The complaint charges substantially that the defendant maintains an office in the City of Chicago; that he is not licensed to practice law in the State of Illinois, but notwithstanding has for a long time engaged in, and continues to engage in, the practice of law and holds himself out as an attorney and induces, or attempts to induce, the public to believe that he is an attorney at law. The complaint itemizes a number of specific acts which it charges constitutes the practice of law, and prays that the defendant be restrained from a continuation of these specified practices.

The answer admits that defendant is a resident of Cook county and states that on December 16, 1918, while defendant resided in the City of Washington, the Commissioner of Patents of the Patent Office of the United States caused the name of the defendant to be duly registered on the Roster of Attorneys entitled to practice before it, and that by virtue of such license he became entitled to perform certain services before the Patent Office and elsewhere.

Defendant's contention is based on his interpretation of the rules of the United States Patent Office in force in the year 1918, at the time of his registration in the United States Patent Office, the pertinent rule 17 then being as follows:

"A register of attorneys will be kept in this office, on which will be entered the names of all persons entitled to represent applicants before the Patent Office in the presentation and prosecution of applications for patent. . . .

"(b) Any person not an attorney at law who is a citizen or resident of the United States who has had three years' experience in patent work under the personal direction and supervision of a duly registered patent attorney . . . and who shall file proof to

the satisfaction of the Commissioner that he is of good moral character and of good repute and possessed of the necessary legal and technical qualifications to enable him to render applicants for patents valuable service and is otherwise competent to advise and assist them in the presentation and prosecution of their applications before the Patent Office.''

The rule was later amended restricting the practice to attorneys at law, but our consideration will be restricted to the rule as it applied at the time of defendant's registration.

The cause was referred to a master in chancery who, after a lengthy hearing, filed a report, to which exceptions were filed by the defendant. Exceptions to certain of the findings of the master were sustained, and to others, overruled, and the decree entered, from which both sides appeal.

The decree found substantially as follows: that the defendant is not licensed to practice law in the State of Illinois or elsewhere, but on December 16, 1918, was registered to practice before the United States Patent Office; that about January, 1930, defendant moved to Chicago and opened offices at 35 East Wacker Drive, has maintained offices there continuously, and has practiced during all of such time as a patent attorney upon a paid basis; that from 1931 to 1941, he had as office associates men who had been admitted to the bar of the State of Illinois; that the stationery used in the early part of his practice described himself as an attorney without qualifications as to his limitations, and had associated with him as ''of counsel'' men who were admitted to the bar of the State of Illinois; that his stationery was changed in 1941, to read, ''Patent Attorney'' and ''Patent and Trade Mark Attorney''; that in several instances the defendant employed attorneys whom he paid for legal services from fees which he collected from his clients and that he em-

ployed attorneys for work to be done for clients whom such attorneys had never met and without the relationship of attorney and client ever having been established; that defendant in his correspondence has repeatedly held himself out as "attorney at law" and that he has also participated as an attorney at law in legal proceedings; that the defendant repeatedly construed patent licenses and gave opinions with respect to the infringement of patents and on at least one occasion wrote a letter charging a company with violation of, and infringement upon, certain patents of a client of defendant, threatening it with litigation; that defendant has been paid for legal services involved in the preparation of infringement opinions and has made a charge in relation to an infringement suit, including the study of patent claim, extension of time in which to file defendant's answer, study of license agreement and preparation of an answer in the infringement suit.

Paragraph 18 of the decree specifically finds "that the defendant has been preparing, drafting and construing assignments, leases and other documents relating to letters patent. The rules of the United States Patent Office provide forms for the preparing of certain papers, including the assignment of patents, licenses for royalty and many other forms. Whether such forms may be used and are intended for the use of Patent Attorneys, whether they are licensed to practice in a state or have a license similar to the license issued to the defendant, should properly be determined by the United States Patent Office. In the preparation, drafting and construing of assignments, leases and licenses, the defendant has not been practicing law in violation of the law of the State of Illinois."

The decree further finds that defendant has instituted in the United States Patent Office trade mark opposition and cancellation proceedings on behalf of parties who had nothing pending in the Patent Office

but who were attacking issued or published trade-mark registrations; that defendant's correspondence as shown by the evidence clearly indicates that he held himself out as an attorney at law.

The decree enjoins the defendant, his agents and employees from:

"(1) Rendering legal opinions relating to infringement and enforcement of patents and trade marks;

"(2) Preparing, drafting and filing pleadings and other legal documents and papers in suits at law and in equity in courts of record and before administrative tribunals, other than the United States Patent Office;

"(3) Participating as an attorney in legal proceedings other than United States Patent Office;

"(4) In behalf of persons represented by him, threatening to bring suit against other parties;

"(5) Preparing and serving notice of and asserting attorney's lien under Section 14 of Chapter 13, Illinois Revised Statutes [Jones Ill. Stats. Ann. 9.13]; and,

"(6) Charging and collecting fees for legal services rendered by him or rendered by him and by others in legal proceedings, other than wherein the United States Patent Office has jurisdiction."

Defendant complains of the decree on the grounds (1) that he has a constitutional right to perform and render all services pertaining to patents and trade marks which are incidental to the license issued to him by the United States Patent Office on December 16, 1918, and that the decree entered by the court takes away from, and abridges, the constitutional rights of the defendant; and (2) that the findings of the court and the injunctional order are contrary to the law and the evidence.

Plaintiffs in their assignment of cross-errors complain of the decree on the grounds (1) that the findings set forth in paragraph 18 of the decree are erroneous, and (2) that the decree in all respects where it departs

from the recommendations of the master in chancery is erroneous and should be set aside, and the relief recommended by the master granted.

Before entering upon a consideration of the errors assigned, it is to be observed that this cause was appealed directly to the Supreme Court (*The Chicago Bar Ass'n v. Kellogg*, 401 Ill. 375), and was transferred to this court on the ground that no constitutional questions were directly involved.

■■ We have come to the conclusion that the evidence before us clearly indicates that for a long period of time defendant was engaged in the unauthorized practice of law within the meaning of the Illinois authorities; and we are of the opinion that the courts of the State of Illinois have the power to determine what contravenes its policy in this respect independent of any other authority. Article I, section 8, of the Constitution of the United States, under which provision defendant claims his rights were violated, provides, "The Congress shall have Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries . . . ." Defendant further maintains that the power to regulate patents was by an Act of Congress conferred upon the Department of the Interior at the time the license was issued to him, and that under its authorization the Patent Office was empowered to permit certain practitioners, including the defendant, to practice before it.

■ The fallacy of defendant's argument lies in the implication that the Patent Office had the right to permit the exercise of prerogatives which are forbidden under the laws of the State of Illinois as constituting unauthorized practice. No such authorization was issued by the United States Patent Office to defendant, nor was any power inherent in the Patent Office to permit defendant to practice law.

Defendant argues that the United States Patent Office makes no distinction as to the rights or duties of attorneys at law and patent attorneys who were not attorneys at law, but who were admitted prior to the change in the rules; and that patent attorneys who were not attorneys at law and were admitted prior to the change have the same rights, privileges, and duties as the patent attorneys at law who solely are admitted under the new rule. With this proposition we thoroughly disagree. The Patent Office did not undertake to invest non-attorneys with the same rights, privileges, and duties as those had by attorneys at law in contravention of the well defined rulings of the courts of Illinois. The police power and the procedure thereunder covering the enrollment and disbarment of lawyers and the punishment of unauthorized practitioners subject to its jurisdiction is a matter reserved for determination by the judicial department of the State of Illinois. As was said in *Pennoyer v. Neff*, 95 U. S. 714, at page 722:

". . . every State has the power to determine for itself the civil *status* and capacities of its inhabitants; to prescribe the subjects upon which they may contract, the forms and solemnities with which their contracts shall be executed, the rights and obligations arising from them, and the mode in which their validity shall be determined and their obligations enforced; and also to regulate the manner and conditions upon which property situated within such territory, both personal and real, may be acquired, enjoyed, and transferred. . . ."

In *Patterson v. Kentucky*, 97 U. S. 501, Patterson had sold a patented oil which, under the standards provided by a Kentucky statute, had been declared unsafe for illuminating purposes. Patterson was indicted for violation of the statute. The court held, at page 504:

". . . By the settled doctrines of this court the police power extends, at least, to the protection of the

lives, the health, and the property of the community against the injurious exercise by any citizen of his own rights. State legislation, strictly and legitimately for police purposes, does not, in the sense of the Constitution, necessarily intrench upon any authority which has been confided, expressly or by implication, to the national government. The Kentucky statute under examination manifestly belongs to that class of legislation. It is, in the best sense, a mere police regulation, deemed essential for the protection of the lives and property of citizens. It expresses in the most solemn form the deliberate judgment of the State that burning fluids which ignite or permanently burn at less than a prescribed temperature are unsafe for illuminating purposes. Whether the policy thus pursued by the State is wise or unwise, it is not the province of the national authorities to determine. That belongs to each State, under its own sense of duty, and in the view of the provisions of its own Constitution. Its action, in those respects, is beyond the corrective power of this court.''

In *Webber v. Virginia,* 103 U. S. 344, the question submitted involved a statute of Virginia prohibiting the sale of manufactured articles of other states and territories without a license. The defendant was prosecuted for selling sewing machines in violation of the statute, and the court held, at pages 347, 348:

''The patent for a dynamite powder does not prevent the State from prescribing the conditions of its manufacture, storage, and sale, so as to protect the community from the danger of explosion. A patent for the manufacture and sale of a deadly poison does not lessen the right of the State to control its handling and use. The legislation respecting the articles which the State may adopt after the patents have expired, it may equally adopt during their continuance. It is only the right to the invention or discovery—the incorporeal

right—which the State cannot interfere with. Congress never intended that the patent laws should displace the police powers of the States, meaning by that term those powers by which the health, good order, peace, and general welfare of the community are promoted. Whatever rights are secured to inventors must be enjoyed in subordination to this general authority of the State over all property within its limits.''

In *Pratt v. Paris Gas Light & Coke Co.,* 168 U. S. 255, in affirming the Supreme Court of Illinois (*Henry Pratt & Co. v. Paris Gas Light & Coke Co.,* 155 Ill. 531), the Supreme Court of the United States held that the State court had jurisdiction in a matter involving the right of a party to sell an apparatus where it was claimed the device infringed on other legitimate patents. The court held, at page 260:

''While the question has never arisen in this court in the exact form presented in this case, we have repeatedly held that the Federal courts have no right, irrespective of citizenship, to entertain suits for the amount of an agreed license, or royalty, or for the specific execution of a contract for the use of a patent, or of other suits where a subsisting contract is shown governing the rights of the party in the use of an invention, and that such suits not only may, but must, be brought in the state courts.''

The Patent Office, however, did not attempt to enlarge upon its authority as it never attempted to authorize defendant to practice law. Rule 17 in effect prior to 1938, merely provided that, in the very limited field defined, qualified non-attorneys might represent applicants ''in the presentation and prosecution of applications for patents.'' This is a far different proposition from the one for which counsel contends, namely, that non-attorneys at law have the same rights, privileges, and duties as patent attorneys at law. The injunctional order does not take away any

constitutional rights of defendant because the defendant never had any right, either directly or indirectly, to practice law.

The next point raised by defendant is that the injunctional order is contrary to the law and the evidence, in the following particulars. Paragraph 1 of the injunctional order enjoins defendant from "rendering legal opinions relating to infringement and enforcement of patents and trade marks." He says, "As to whether or not there is an infringement of a patent is a question that can be passed upon by but very few practicing attorneys at law. It must be done by a person specially skilled to render such service." This contention of defendant we find without merit. In our opinion, the rendering of opinions relating to the infringement of patents and the enforcement of patents and trade marks very definitely involves the practice of law. Whether or not a patent is violated depends upon many factors, which question can only be determined by the courts, Federal or State as the case may be, presented by duly licensed attorneys at law. When a lawyer is called upon to examine and render an opinion upon the title to a patent, he must not only have the knowledge enabling him to construe instruments of record in the Patent Office, but he must also have a wide knowledge of law which will involve collateral issues entering into the ultimate decision. He must be familiar with the laws of descent and distribution, bankruptcy, contracts, and civil practice, all of which are particularly within the field of an attorney at law, and from which field all others are excluded. Opinions and advice pertaining to the preparation, construction and enforcement of licenses, sublicenses, cross-licenses, and the like, require legal skill and knowledge and must be based, not only upon an examination of facts, but upon sound conclusions of law. Only an attorney at law is authorized to perform such service for a fee. That the practice of patent law is a highly specialized field is to be admitted, but it is

ably covered in this State by the many capable attorneys at law who are there practicing.

█ The defendant further complains of paragraphs (2) and (5) of the injunctional order, which are as follows:

"(2) Preparing, drafting and filing pleadings and other legal documents and papers in suits at law and in equity in courts of record and before administrative tribunals, other than the United States Patent Office";

"(5) Preparing and serving notice of and asserting attorney's lien under Section 14 of Chapter 13, Illinois Revised Statutes [Jones Ill. Stats. Ann. 9.13]."

He says that his offenses, if any, in respect to these two paragraphs consisted of isolated cases occurring some time before the filing of the bill of complaint in 1941; that there has been no threat to repeat such occurrences, and that courts of equity are not to be used to punish past offenses but are to be used only in proper cases to prevent wrongdoing in the future. In support of his contention defendant cites the case of *Walling v. T. Buettner & Co.*, 133 F. (2d) 306. There the administrator of the Wage and Hour Division of the United States Department of Labor brought suit to enjoin the employment of homeworkers under the Fair Labor Standards Act. Upon being advised that the so-called homeworkers were employees under the Act and subject to its standards, the defendant discontinued the illegal practice. The suit was brought eighty-one days after such discontinuance. The court held that, since the defendant acted in good faith and had entirely abandoned the illegal practice, injunctional relief was not authorized. We think the case plainly distinguishable on the facts from the instant one. While it is true that in the instant case the testimony complained of, insofar as to drafting pleadings and serving attorney's lien, consisted of single incidents, the findings as a whole must be considered. In

view of defendant's insistence that he has a right to perform many of the acts set forth in his answer—which we here hold to be acts involving the practice of law—and in view of his insistent contentions that he has engaged in no illegal enterprise, it appears that injunction is the only remedy to put a stop to his illegal practice.

Another consideration which weighs heavily with this court is the fact that up until the date of the filing of the bill in this case defendant used letterheads which would lead any layman who viewed them to conclude that defendant was a patent attorney vested with all the capabilities and privileges of an attorney at law. In a case of this kind, the general welfare of the public is of primary concern. The public are entitled to protection against unauthorized practitioners of the law, and the courts should lend a ready hand to suppress the evil by way of injunctional relief wherever it appears. The fact that the unauthorized practice may have been without malevolence, under a misapprehension as to rights, renders the menace none the less formidable nor the remedy by injunction none the less appropriate.

Defendant further objects to paragraphs (3) and (4) of the decree, which are as follows:

"(3) Participating as an attorney in legal proceedings other than United States Patent Office;

"(4) In behalf of persons represented by him, threatening to bring suit against other parties."

While defendant has the same right to appear as a witness in a legal proceeding as any other technical expert may have, we have heretofore clearly indicated that he has no right whatsoever to participate as an attorney at law.

Defendant further objects to paragraph (6) of the decree, which is as follows:

"(6) Charging and collecting fees for legal services rendered by him or rendered by him and by others in legal proceedings, other than wherein the United States Patent Office has jurisdiction."

From what we have heretofore said, it is obvious defendant has no right to charge or collect fees for legal services. In restricting defendant's disability to charge and collect fees for legal services rendered in proceedings other than where the Patent Office has jurisdiction, the chancellor was in error, and the cross-error of plaintiffs on this score is well assigned. Defendant has no right to collect fees for legal services wherever rendered.

 The defendant further contends that certain findings of the court are contrary to the law and the evidence. The evidence in this case consists largely of defendant's own testimony given when he was called for examination under the provisions of section 60. This testimony, together with the many documents introduced, comprises the majority of all the testimony taken. We have carefully reviewed the findings of which defendant complains and we find they are amply supported by the evidence.

 Plaintiff assigns cross-error on finding 18 of the chancellor, which finding is as follows:

"18. The Court further finds that the defendant has been preparing, drafting and construing assignments, leases and other documents relating to letters patent. The rules of the United States Patent Office provide forms for the preparing of certain papers, including the assignment of patents, licenses for royalty and many other forms. Whether such forms may be used and are intended for the use of Patent Attorneys, whether they are licensed to practice in a state or have a license similar to the license issued to the defendant, should properly be determined by the United States

Patent Office. In the preparation, drafting and construing of assignments, leases and licenses, the defendant has not been practicing law in violation of the law of the State of Illinois.''

This finding of the decree, to which cross-error is assigned, is erroneous. The courts of the State of Illinois, and not the United States Patent Office, may determine what constitutes the illegal practice of law in this State. The fact that the defendant used forms instead of original documents is not controlling upon the question of whether or not he was engaged in the practice of law. We have heretofore said that the preparing, drafting, and construing of assignments, leases, and other such documents relating to letters patent, constitute the practice of law; and insofar as the decree authorizes the preparation, drafting, and filing of pleadings anywhere, it is erroneous.

Defendant in his answer has asserted that he has the right to perform certain specified services. In his reply brief he asserts that the only issue before this court is to determine whether or not he has the legal right to perform these acts. The issue before us is not what things defendant may do under the authority he claims from his license to appear before the United States Patent Office, but what things, if any, he has done in violation of the laws of the State of Illinois and what, from his past conduct, he may reasonably be expected to do in the future. In support of the position taken in his answer defendant leans heavily upon the case of *Schroeder v. Wheeler*, 126 Cal. App. 367, 14 P. (2d) 903. In that case a patent attorney entered into a written contract with his client ''to prosecute and defend, or cause to be prosecuted and defended, all actions at law for infringement of patents and unfair competition, as in his belief and judgment shall be beneficial to the client.'' The trial court held the contract was illegal, and the Appellate Court

held that it was a contract which the patent lawyer was capable of performing. · If the interpretation given to this case, which was given by an intermediary court of the State of California, is sound, it is completely at variance with the well established law of this State. In the case of *People v. Peoples Stock Yards State Bank*, 344 Ill. 462, which was a contempt proceeding against the defendant for engaging in the illegal practice of law and in which an injunction was sought to enjoin it from continuing such practice, the court said at pages 475, 476:

"The question remaining for consideration is whether the conduct of respondent has amounted to practicing law. As above indicated, the practice of law involves not only appearance in court in connection with litigation but also services rendered out of court. In litigated matters it involves not only the actual representation of the client in court but also services rendered in advising a client as to his cause of action or defense. The practice of law also includes the giving of advice or rendering services requiring the use of legal skill or knowledge. The commissioner in his report has submitted a definition for 'practicing law,' as follows: 'Practicing as an attorney or counselor at law, according to the laws and customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' In our opinion this definition is substantially correct. It is in substantial accord with the definition employed by a special committee of the American Bar Association in drafting supplements to the canons of professional ethics. (52 Am. Bar Ass'n Rep. 1927, p. 382.) In *Matter of Duncan*, 83 S. C. 186, 65 S. E. 210, 24 L. R. A. (N. S.) 750, it is said: 'It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the

generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law. The following is the concise definition given by the Supreme Court of the United States: "Persons acting professionally in legal formalities, negotiations or proceedings by the warrant or authority of their clients may be regarded as attorneys at law within the meaning of that designation as employed in this country." . . ."

Accordingly, the decree of the superior court is reversed and the cause is remanded with directions to enter a decree which shall be without prejudice to defendant's rights to advise and assist applicants for patents in the presentation and prosecution of their applications for patents before the United States Patent Office, but which shall enjoin the defendant from the following activities:

1. Giving legal advice;

2. Preparing, drafting and construing legal documents, contracts, including patent licenses and deeds, assignments and other evidences of transfer of title to or interests in patent and other property;

3. Rendering legal opinions, including legal opinions relating to title to, and validity, infringement and enforcement of, patents and trade marks and rights therein and thereto;

4. Preparing, drafting and filing pleadings and other legal documents and papers in suits at law and in equity, in courts of record and before administrative tribunals, other than the Patent Office;

5. Participating, as an attorney, in legal proceedings;

6. In behalf of persons represented by him, threatening to bring suit against other parties;

7. Preparing and serving notice of and asserting attorney's lien under Section 14 of Chapter 13, Illinois Revised Statutes [Jones Ill. Stats. Ann. 9.13];

8. Charging and collecting fees for legal services rendered by him and rendered by him and others.

*Reversed and remanded with directions.*

NIEMEYER and FEINBERG, JJ., concur.