**UNAUTHORIZED PRACTICE OF LAW COMMITTEE OF the SUPREME COURT OF COLORADO, Complainant,**

v.

**Richard O. GRIMES, Respondent.**

**No. 82SA94.**

Supreme Court of Colorado,
En Banc.

Nov. 29, 1982.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Richard O. Grimes, pro se.

ERICKSON, Justice.

The Unauthorized Practice of Law Committee of the Colorado Supreme Court filed a complaint with this Court alleging that the respondent, Richard O. Grimes, was engaged in the unauthorized practice of law. On March 4, 1982, we issued a citation requiring the respondent to show cause why he should not be held in contempt of court for the unauthorized practice of law. C.R.

C.P. 238. The pleadings filed by the respondent created factual issues which were referred to a hearing master for determination. Thereafter, a petition for a preliminary injunction and documents were filed which established that the respondent was engaged in the practice of law and on August 19, 1982, we issued a preliminary injunction enjoining him from continuing the unauthorized practice of law.

The Unauthorized Practice of Law Committee's requests for a permanent injunction and for a finding of contempt of court were heard by the hearing master on September 3, 1982. The hearing master found the respondent to be in contempt of this Court and recommended that a permanent injunction be issued. We now adopt the findings and conclusions of the hearing master. We order that Richard O. Grimes be permanently enjoined from engaging in the practice of law and find that he is in contempt of the Supreme Court. We further order that the respondent be fined $500 and that he pay the costs of this proceeding. He is also sentenced to six months confinement in the County Jail of the City and County of Denver. All but ninety days of the six month sentence are suspended on the condition that the respondent does not practice law or perform any service constituting the practice of law, and does not further violate our injunction against his unauthorized practice of law.

## I.

■ Article VI of the Colorado Constitution grants the Colorado Supreme Court jurisdiction to regulate and control the practice of law in Colorado. *Conway-Bogue v. Denver Bar Ass'n,* 135 Colo. 398, 312 P.2d 998 (1957). Under section 12–5–112, C.R.S. 1973 (now in 1978 Repl.Vol. 5), it is contempt of this Court to practice law in Colorado without first being admitted as a member of the bar of this Court. It is within our authority to promulgate rules governing the admission and regulation of lawyers, as well as prohibitions against the unauthorized practice of law. *See* C.R.C.P. 201–260. We said in *Conway-Bogue v.*

*Denver Bar Ass'n,* 135 Colo. 398, 407, 312 P.2d 998, 1002–03 (1957), "[t]he judiciary has inherent and plenary powers, with or without legislative enactment, to regulate and control the practice of law to the extent that is reasonably necessary to the proper functioning of the judiciary." A long line of case law in other jurisdictions affirms the inherent power of the judiciary to regulate the unauthorized practice of law. *See, e.g., Petition of Florida State Bar Ass'n,* 134 Fla. 851, 186 So. 280 (1938); *State v. Sperry,* 140 So.2d 587 (Fla.1962); *Chicago Bar Ass'n v. Kellogg,* 338 Ill.App. 618, 88 N.E.2d 519 (1949); *In re Baker,* 8 N.J. 321, 85 A.2d 505 (1951); *R.J. Edwards, Inc. v. Hert,* 504 P.2d 407 (Okl.1972); *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959). *See also American Bar Association, Unauthorized Practice Handbook* (1972); Comment, *Control of the Unauthorized Practice of Law: Scope of Inherent Judicial Power,* 28 U.Chi.L.Rev. 162 (1960); Comment, *Remedies Available to Control the Unauthorized Practice of Law,* 62 Colum.L.Rev. 501 (1962).

The power of the Supreme Court to determine who should be authorized to practice law would be meaningless if it could not prevent the practice of law by those not admitted to the bar. *State v. Sperry, supra.* The court in *West Virginia State Bar v. Earley, supra,* stated:

"It would indeed be an anomaly if the power of the courts to protect the public from the improper or unlawful practice of law were limited to licensed attorneys and did not extend or apply to incompetent and unqualified laymen and lay agencies. Such a limitation of the power of the courts would reduce the legal professional to an unskilled vocation, destroy the usefulness of licensed attorneys, as officers of the courts, and substantially impair and disrupt the orderly and effective administration of justice by the judicial department of the government; and this the law will not recognize or permit."

144 W.Va. at 536, 109 S.E.2d at 440.

■ Lawyers are officers of the court, and, as such, are subject to supervision and

regulation by the court. *West Virginia State Bar v. Earley, supra.* Not only do we regulate admissions to the Bar, but we continually oversee the practice of law to insure that the public obtains legal advice only from qualified and competent counsel. We do not hesitate to suspend or revoke the license of a lawyer who abuses the honor and privilege of practicing law in this state. Accordingly, we cannot permit an unlicensed person to commit acts which we would condemn if done by a lawyer. *Conway Bogue v. Denver Bar Ass'n, supra; People v. Gregory,* 135 Colo. 438, 312 P.2d 512 (1957). As the Oklahoma Supreme Court noted of its supervisory power and duty:

> "Any criterion for distinguishing law practice from that which belongs to other fields can be properly geared to the public welfare only if we keep in mind the manner in which the licensing of lawyers serves its purpose. The law practice franchise or privilege is based upon the threefold requirements of *ability, character, and responsible supervision.* The public welfare is safeguarded not merely by limiting law practice to individuals who are possessed of the requisite ability and character, but also by the further requirement that such practitioners shall thenceforth be officers of the court and subject to its supervision. (Emphasis supplied)"

*R.J. Edwards, Inc. v. Hert,* 504 P.2d 407, 413 (Okl.1972) (quoting *Gardner v. Conway,* 234 Minn. 468, 48 N.W.2d 788 (1951)). *See also Conway-Bogue v. Denver Bar Ass'n, supra; Chicago Bar Ass'n v. Kellogg, supra.*

The respondent argues that, despite our authority to regulate and supervise the practice of law, he has a right under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), to provide lay assistance to individuals representing themselves in legal matters. *See Board of County Commissioners v. Howard,* 640 P.2d 1128 (Colo.1982); *People v. Dunlap,* 623 P.2d 408 (Colo.1981). However, he has misread or does not understand the holding in *Faretta v. California, supra. Faretta* does not hold that a state may not regulate the practice of law or the admissions of attorneys to the Bar. It holds that an individual has a constitutionally protected right to appear *pro se,* or as his own counsel, in a criminal case. Apart from this proceeding, the respondent did not represent himself, but represented other individuals. He advised clients as to their legal rights and obligations, and represented third parties before the courts of this state. In his unauthorized practice of the law, the respondent was not granted protection under *Faretta v. California, supra,* or under the Sixth or Fourteenth Amendments of the United States Constitution as he claims, but was violating our injunctive order after he had been served and knew of the restrictions we had imposed. *West Virginia State Bar v. Earley, supra. See also In re Lockwood,* 154 U.S. 116, 14 S.Ct. 1082, 38 L.Ed. 929 (1894).

## II.

An over-abundance of evidence appears in the record to support the hearing master's finding that respondent was engaged in the unauthorized practice of law.[1]

---

1. C.R.C.P. 201.3(2) (effective December 1, 1982), provides a definition of what constitutes the practice of law which is supported by long-standing case authority and provides in pertinent part:

    "(2) For purposes of this rule 'practice of law' means:

    (a) the private practice of law as a sole practitioner or as a lawyer employee of or partner or shareholder in a law firm, professional corporation, legal clinic, legal services office, or similar entity; or

    (b) employment as a lawyer for a corporation, partnership, trust, individual, or other entity with the primary duties of:

    (i) furnishing legal counsel, drafting documents and pleadings, and interpreting and giving advice with respect to the law, and/or

    (ii) preparing, trying or presenting cases before courts, executive departments, administrative bureaus or agencies; or

    (c) employment as a lawyer in the law offices of the executive, legislative, or judicial departments of the United States, including the independent agencies thereof, or of any state, political subdivision of a state, territo-

The hearing master found that respondent was never admitted or registered to practice law in Colorado. Nevertheless, the respondent accepted fees and prepared legal motions, notices, and other memoranda for various individuals and also advised members of the public as to what he thought their legal rights and obligations were.

The record establishes that in 1979 the respondent assisted a party to a law suit by preparing a notice to set, a "motion seeking presiding judge's disqualification," and a "memorandum of authorities in support of the amended complaint." Two years later, he again prepared similar documents for a different person. At various other times, even after the complaint in this case was filed, respondent prepared documents and pleadings affecting the legal rights and obligations of parties involved in lawsuits. He advertised in local newspapers and in the yellow pages of the telephone book, representing himself at different times as a "lay assistant," public scrivener," and "arbiter." His advertisement in one newspaper was found under the heading "Legal Counsel." He also placed the following listing in the Denver Telephone Directory under "Lawyers":

"Grimes, Richard O.

Don't Litigate—Hardens The Lines

Grimes Private Courtroom Disputes Compromised

Inquire About My Unpublished Lawbook

427 15_____ 623–9744"

The pleadings which he has filed and actions he has taken on behalf of individuals who have paid him fees would constitute actionable malpractice if committed by a lawyer. The respondent's actions, in our view, would also subject him to disciplinary action by the Grievance Committee of this Court if he were a licensed member of the Bar.[2]

ry, special district, or municipality of the United States, with the primary duties of

(i) furnishing legal counsel, drafting documents and pleadings, and interpreting and giving advice with respect to the law, and/or

(ii) preparing, trying or presenting cases before courts, executive departments, administrative bureaus or agencies; or

(d) employment as a judge, magistrate, hearing examiner, administrative law judge, law clerk, or similar official of the United States, including the independent agencies thereof, or of any state, territory or municipality of the United States with the duties of hearing and deciding cases and controversies in judicial or administrative proceedings, provided such employment is available only to a lawyer; or

(e) employment as a teacher of law at a law school approved by the American Bar Association throughout the applicant's employment; or

(f) any combination of subparagraphs (a)–(e) above.

"(3) A full-time commissioned officer and judge advocate of the military services of the United States stationed in this state may be temporarily admitted to the Bar of Colorado, upon request of his or her commanding officer. Such admission shall be solely for the purpose of practice and court appearance in his or her capacity as a judge advocate and shall continue only as long as he or she is serving as a judge advocate in Colorado.

"(4) All other applicants are Class B applicants, who shall take a written examination."

*Compare Thibodeaux v. Creditors Service, Inc.,* 191 Colo. 215, 551 P.2d 714 (1976); *People v. Hanna,* 127 Colo. 481, 258 P.2d 492 (1953); *People ex rel. Zimmerman v. Flanders,* 121 Colo. 25, 212 P.2d 502 (1949); *R.J. Edwards, Inc. v. Hert, supra.*

**2.** The fact that the respondent is in contempt of this Court cannot be better demonstrated than by the pleading which the respondent filed with the hearing master. The pleading is denominated as a "Notice of Disobedience," and states:

"THE HONORED and RESPECTED members of the VIGILANCE COMMITTEE of Colorado, also known as the Unauthorized Practice of Law Committee, have enjoined Grimes 'from any conduct which may constitute the unauthorized practice of law in the state of Colorado.' Such action, and ambiguously taken, is repugnant to the fundamental freedom guaranteed Grimes by the Bill of Rights. The 14th Amendment to the Constitution of the United States is a commodious cart transporting the sentiment of the framers, Grimes' activity of providing lay assistance to pro se litigants as an 'unenumerated' right guaranteed by the 9th Amendment.

" 'Essential fairness' is the phrase used over and over to define rights encompassed in due process. The actions of vigilantes (in this case. The Lawyers on THE BENCH) is *not* the fairness demanded by America's legal history

"MY GOD, even a child will opine that 1. charges brought by lawyers 2. Petitioned by

The imposition of a fine and imprisonment are harsh sanctions, but are necessary to vindicate the dignity of the Court and to protect the citizens of Colorado. We can not accept the respondent's argument that anyone should be entitled to practice law if he so desires. We do not license attorneys, as the respondent claims, to create a monopoly or to hamper the access of citizens to the courts. The purpose of the bar and our admission requirements is to protect the public from unqualified individuals who charge fees for providing incompetent legal advice. We have imposed high standards on members of the legal profession to insure faithful observance of the high moral standards embodied in our Code of Professional Responsibility. See chapters 18–20 and appendix, C.R.C.P. We admit every person to the bar who meets the standards of education training, experience, and moral character which our rules require. C.R.C.P. 201–227. We will not permit an unqualified person to practice law. The respondent has created his own rules and has refused to comply with our rules and orders.

### III.

Accordingly, because of the large number of cases which the respondent has handled, and his disregard of our injunctive order which prohibited him from practicing law, we make the following findings of fact and conclusions of law, and impose the following fine and sentence:

1. That the respondent has violated and disregarded the preliminary injunction issued by this Court and continues to engage in the unauthorized practice of law.

2. That the respondent was given notice of the hearing before the hearing master, was subpoenaed to attend, elected to file a notice of disobedience, and refused to appear.

3. That the respondent is not authorized to practice law and is not registered as an attorney in the State of Colorado.

4. That the respondent is actively engaged in the practice of law in violation of our injunctive order, and has committed acts which are a serious threat to the public and which would subject him to disciplinary action if he were a lawyer.

5. That the respondent has ignored our order enjoining him from practicing law and has continued to engage in the active practice of law as reported by the hearing master and as reflected by the exhibits on file with this Court.

6. That the respondent, Richard O. Grimes, is in contempt of this Court and it is ordered that he be sentenced to six months confinement in the County Jail for the City and County of Denver to vindicate the dignity of the Court. All but ninety days of the six months sentence are suspended on the condition that the respondent does not practice law or perform any service constituting the practice of law, or further violate our injunctive order.

7. That a fine of $500 is imposed which must be paid to the Clerk of the Supreme Court within six months.

8. That costs in the amount of $901.87 are assessed against the respondent and shall be paid to the Supreme Court Unauthorized Practice of Law Committee, 190 East 9th Avenue, Suite 440, Denver, Colorado 80203, within six months.

lawyers 3. Prosecuted by lawyers 4. Judged by lawyers 5. Jury is lawyers 6. Sentencing done by lawyers is NOT only unfair, but intensely unfair. Lawyers stand to gain if Grimes is eliminated.

"Grimes will not submit to the wisdom or unwisdom of Teacher, King, Pope, Adolf Hitler or the lawyers on the Supreme Court of

Colorado. Grimes will be governed by rules and principles and NOT by unconfined authority, Grimes will yield to a decision handed down by a jury of his peers. A jury of vigilantes is not Grimes' peer.

"Grimes will be foolhardy to appear before vigilantes."