UNAUTHORIZED PRACTICE OF LAW
COMMITTEE OF the SUPREME
COURT OF COLORADO, Petitioner,

v.

Sy PROG, Respondent.

No. 86SA400.

Supreme Court of Colorado,
En Banc.

June 20, 1988.

Linda Donnelly, Disciplinary Prosecutor,
Denver, for petitioner.

Sy Prog, Campo, pro se.

LOHR, Justice.

This is a proceeding under this court's
rules prohibiting the unauthorized practice
of law, C.R.C.P. 228 to 240.1, to determine
whether the respondent, Sy Prog, has en-
gaged in the unauthorized practice of law
and, if so, to determine the appropriate
relief to be ordered. A hearing master

appointed by this court conducted a hearing, made findings, and concluded that the respondent had engaged in the unauthorized practice of law. The hearing master recommended that the respondent be permanently enjoined from the further practice of law. The hearing master also concluded that the respondent's conduct constituted contempt of court and recommended that he be fined $6,678.00 and be confined in such a place as this court may direct for the period of one year. We adopt the findings and conclusions of the hearing master and adopt his recommendations for injunctive relief and the imposition of a fine. We decline, however, to impose a period of confinement.

## I.

The Unauthorized Practice of Law Committee of the Colorado Supreme Court (committee) filed a petition on October 27, 1986, requesting that this court issue an order requiring the respondent, Sy Prog, to show cause why he should not be enjoined from the unauthorized practice of law, pursuant to C.R.C.P. 234, and why he should not be held in contempt of this court and be subject to a fine or imprisonment for such unauthorized practice, pursuant to C.R.C.P. 238. We issued a rule and order to show cause, and thereafter the respondent filed a response. We then referred the matter for hearing pursuant to C.R.C.P. 238(d), and appointed the Honorable Paul V. Hodges as the hearing master. Judge Hodges subsequently disqualified himself, and we appointed the Honorable Ralph H. Coyte as the new hearing master. On June 9, 1987, the committee filed a motion to amend its petition and to refer the amended petition to the hearing master. We granted the committee's motion. Thereafter, the respondent filed a pleading entitled "Basic Law Embarrassments," apparently in answer to the amended petition.[1] On September 30, 1987, a hearing was conducted before the hearing master in Springfield, Colorado. Although duly notified, the respondent did not appear at the hearing. On November 24, 1987, the hearing master filed with this court his findings, conclusions and recommendation (findings). The respondent was served with a copy of the findings, but he filed no exceptions to them.

## II.

We summarize the relevant facts from the findings of the hearing master. The respondent has never been licensed to practice law in the state of Colorado, nor has the respondent attended law school. Moreover, the respondent did not complete high school or receive any formal educational training after leaving high school. Consequently, the respondent does not meet the educational requirements for admission to the Colorado bar under C.R.C.P. 201.5.

On July 29, 1985, the Heritage Savings & Loan Association (Heritage) filed a motion in Prowers County District Court, pursuant to C.R.C.P. 120, seeking authorization to sell certain real property owned by Walter Marston and Ruth Marston pursuant to a

---

1. The pleading contained pages of the respondent's theories about the American constitutional system, as well as attacks against various parties involved in the unauthorized practice of law proceeding against him. Representative of such attacks is the following, directed to the disciplinary prosecutor:

   [The disciplinary prosecutor] is a power-hungry female, who thrives on de-facto rules ONLY. She is a persecutor. She is not a District Attorney. She has no power, judicially speaking. She has threatened one, Sy Prog with imprisonment, sanctions of all kinds and wants him to be held in contempt pursuant to her backbone, rules, not Laws of the Land. She wants to have him disciplined. She does not want him, ever again, to talk to anyone about Laws of the Land & she does not him

   [sic] to write or publish 'anything' on any topic, or subject matter *without* her permission; she wants him to be restricted to the rules forbidding him to write, speak or publish, something like Iran-like Czar control over his life, and liberties; & she wants sanctions against him, one being, 'void-out Article II section 10 to the Colorado constitution, which grants him the right to, Freedom of speech; no law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject;' and secondly, [she] insists that his First Amendment rights be 'voided-out'; and she also wants him to be a ward of the very private bar association, something like a life-long probation. (Emphasis in original.)

power of sale contained in a deed of trust encumbering the property. Walter Marston requested the respondent to advise him about legal procedures and defenses in the foreclosure proceedings. On September 10, 1985, Heritage filed a second motion in the same court, pursuant to C.R.C.P. 120, seeking authorization to sell another parcel of real property owned by the Marstons pursuant to a power of sale contained in a deed of trust encumbering the property. Walter Marston sought the respondent's advice and assistance in this action as well.

Before the respondent would agree to assist the Marstons, he obtained Walter Marston's signature on a power of attorney form entitled "PWP Enterprises Copy Agreement." The hearing master found that the apparent purpose of the agreement was to prevent the Marstons from copying and circulating any pleadings drafted by the respondent. Pursuant to the agreement, the respondent drafted various documents and pleadings to be signed and filed by the Marstons. The respondent was responsible for the language of the documents and pleadings and for the decisions regarding legal strategy. The Marstons did not thoroughly review many of the pleadings and did not understand most of the pleadings they did review.

Regarding the first C.R.C.P. 120 proceeding, case number 85CV81, the respondent drafted the following pleadings, which the Marstons filed in Prowers County District Court in August and September of 1985:

a. Motion to Vacate Notice by Clerk;

b. Demurrer to Irresponsible Attorney;

c. Motion to Move this Court to Recuse Judge;

d. Demurrer to Petitioners Appellees Motion;

e. Notice of Motion; Motion to Quash De Facto Ploy;

f. Notice of Filing Notice of Appeal;

g. Demurrer to Motion to Strike; and

h. Motion—Chilling and Effect Doctrine.

The respondent also drafted and advised the Marstons to file the following pleadings in the second C.R.C.P. 120 proceeding, case number 85CV106:

a. Demurrer to Notice, and Cross-Claimant;

b. Motion for Recusal of Judge; and

c. Motion for Stern Definition.

The Marstons filed these latter pleadings in October 1985.

While assisting the Marstons in the C.R.C.P. 120 actions, the respondent advised them to file two additional actions. The respondent counseled the Marstons to file a civil suit in Prowers County District Court against particular businessmen associated with Heritage, certain members of the judiciary and various other public officials, such as the Prowers County Public Trustee. The respondent drafted a summons and complaint to commence this action, later assigned case number 85CV109. Walter Marston signed the complaint and filed it, along with an unsigned summons, on September 18, 1985. The complaint averred a myriad of allegedly illegal activities on the part of the named defendants.

In addition, the respondent advised the Marstons to file an action in the United States District Court for the District of Colorado. The defendants included many of the defendants named in the state court action 85CV109. The respondent drafted a thirty-seven page pleading entitled "TITLE 28 USC RULE 65(b) Temporary Restraining Order; & (d) Form & Scope of Injunction or Restraining Order." The pleading was apparently an attempt to prevent the foreclosure of the Marstons' properties. The pleading contained an elaboration of the respondent's theories of United States monetary and commercial transaction laws, including what he called the "paper numbers racket," as well as cartoons disparaging some of the named defendants. The Marstons signed this pleading and filed it on September 16, 1985. The court thereafter dismissed the complaint for failure to state a claim upon which relief could be granted. For his services, the Marstons paid the respondent a fee of approximately $400.00.

Most of the issues raised in the pleadings the respondent drafted in the state cases

and the federal case were not legally cognizable. Moreover, the pleadings contained baseless and personal attacks against some of the named defendants. For example, in case number 85CV109 the respondent repeatedly accused judges, other public officials, and businessmen associated with Heritage of engaging in various felonious criminal activities. He referred to some of these persons as perjurers, liars and cheats. He described the county treasurer as a "guilty bitch" and accused her of rigging phony "bitch bids." The complaint also alleged that a deputy clerk of the Prowers County District Court had made false entries on court records.

In case number 85CV109 the defendants filed a motion to quash the summons. The Marstons subsequently filed a "motion to withdraw" and a motion to dismiss the complaint. The defendants confessed the Marstons' motion to dismiss but requested an award of attorneys' fees and costs. Certain of the defendants also moved to enjoin the Marstons from filing further pro se suits within the fifteenth judicial district. The district court first granted the latter motion. Thereafter, the court dismissed the Marstons' complaint, granted the defendants' request for attorneys' fees and entered judgment against the Marstons in the amount of $6,678.62, representing the defendants' attorneys' fees. In so ruling, the district court found that the complaint had been brought in bad faith, was totally lacking in justification and was accusatory and retributive.

In case number 85CV106, one of the C.R. C.P. 120 proceedings, the respondent drafted a motion to recuse the district judge, and Walter Marston filed the motion. The motion accused the judge of criminal con-

duct, condoning embezzlement, and ineptitude, and also contained derogatory remarks concerning other judges in the fifteenth judicial district.[2] As a result of the motion, the Prowers County District Attorney initiated criminal contempt proceedings against Marston. Acting without the assistance of the respondent, Marston pleaded no contest in the contempt proceedings and agreed to apologize to the judicial officers who were the subjects of his statements and to pay a $100.00 fine to the court.

The hearing master found that the respondent's conduct, in addition to damaging the Marstons, had also harmed the state of Colorado. First, because the Marstons were unable to pay the attorneys' fees assessed against them, the state reimbursed one of the attorney's firms for its fees in the amount of $4,524.02, presumably for defending state officials. Second, the hearing master found that the respondent's activities resulted in unnecessary and excessive expenditure of judicial resources. As examples, the hearing master cited Prowers County District Court action 85CV109 and the United States District Court action, each of which the hearing master characterized as frivolous and groundless. In addition, the hearing master noted that the respondent recommended and prepared an appeal of the first C.R.C. P. 120 proceeding despite the fact that C.R. C.P. 120(d) specifically prohibits such appeals.

The hearing master concluded that the respondent had been engaged in the unauthorized practice of law and recommended that he be permanently enjoined from the further practice of law. The hearing master further concluded that the respondent

---

2. The motion argued a number of grounds for the judge's recusal. Representative of the arguments is the following paragraph:

One way to prove the ineptness of [the judge] would be to enforce a sure-fire proof method of proving whether or not he is judicially worthy, *and that is a Motion that a purgatory Oath be administered, either 1) he leaves office now, or 2) he takes the witness stand and* clears his name of several accusations, to mention a few only, a) he passes off base coinage a felony, b) he is known to throw cases, BY NOT allowing parties in various cases to exercise Constitutional Law, c) as a chief judgeship, dares to allow, it is believed an *alcoholic* judgeship ... unfit for public service, d) by upholding rule 120 and power of sale, therefore downgrading Art I Sec 9 & 10 to the U.S. Constitution. He should recuse himself & allow a fair and impartial State Court judge selected by lottery set jointly by the parties to try this case.
(Emphasis in original.)

was guilty of contempt of this court pursuant to section 12–5–112, 5 C.R.S. (1985), and in contempt of the various other courts in which he had caused the Marstons to file pleadings. The hearing master prefaced his recommended sanctions for contempt with further findings in which he referred to three documents the respondent had served on him during the course of the unauthorized practice of law proceedings. In the documents the respondent characterized the proceedings against him as a "charade" and a "lawless venture." Additionally, the respondent accused the hearing master, the clerk of the supreme court, and the disciplinary prosecutor of engaging in felonious conduct. The hearing master recommended that the respondent be fined $6,678.00, the approximate amount of the attorneys' fees assessed against the Marstons, and that "[the respondent] be confined in such place as the Supreme Court might direct for a period of one (1) year."

### III.

■ This court has the exclusive authority under the Colorado Constitution to regulate and control the practice of law in Colorado. *Unauthorized Practice of Law Comm. v. Grimes,* 654 P.2d 822, 823 (Colo. 1982); *Denver Bar Ass'n v. P.U.C.,* 154 Colo. 273, 277, 391 P.2d 467, 470 (1964). This authority includes the power to prohibit the unauthorized practice of law and to promulgate rules in furtherance of that end. *Unauthorized Practice of Law Comm. v. Grimes,* 654 P.2d at 823; *see Unauthorized Practice of Law Comm. v. Bodhaine,* 738 P.2d 376, 377 (Colo. 1987). The determination of what acts do or do not constitute the practice of law is a judicial function. *Conway-Bogue Realty Inv. Co. v. Denver Bar Ass'n,* 135 Colo. 398, 406, 312 P.2d 998, 1002 (1957). While recognizing the difficulty of formulating and applying an all-inclusive definition of the practice of law, we have stated that "generally one who acts in a representative capacity in protecting, enforcing, or defending the legal rights and duties of another and in counselling, advising and assisting him in connection with these rights and duties is engaged in the practice of law."

*Denver Bar Ass'n v. P.U.C.,* 154 Colo. 273, 279, 391 P.2d 467, 471 (1964). *See also Unauthorized Practice of Law Comm. v. Grimes,* 654 P.2d at 824 n. 1. In exercise of our jurisdiction to define the practice of law and to prohibit the unauthorized practice of law, we have promulgated detailed rules. *See* C.R.C.P. 228 to 240.1. *See also* § 12–5–112, 5 C.R.S. (1985) (specifying that practice of law without a license constitutes contempt of supreme court). In order to practice law in Colorado, a person must first obtain a license for that purpose from this court. *Unauthorized Practice of Law Comm. v. Bodhaine,* 738 P.2d at 377. *See* C.R.C.P. 201.1 to 227 (rules governing admission to bar); C.R.C.P. 228 to 240.1 (rules governing unauthorized practice of law). Persons who engage in the unauthorized practice of law are subject to injunction proceedings. C.R.C.P. 234 to 237. *See Bodhaine,* 738 P.2d at 377. The unauthorized practice of law also constitutes contempt of this court and subjects a person engaging in such practice to punitive sanctions. C.R.C.P. 239; § 12–5–112. Injunctive relief is also available as a remedy for contempt of court resulting from unauthorized practice of law. C.R.C.P. 239(e).

### IV.

■ We have no difficulty in concluding that the respondent's activities in assisting the Marstons constituted the practice of law. The respondent obtained a written agreement from the Marstons authorizing him to advise them and to draft legal pleadings on their behalf. He then researched the matters and advised Walter Marston on the steps to be taken, claims to be asserted and defenses to be raised. As the hearing master found, the respondent was responsible for the language, the legal issues raised, and the legal authorities cited in the documents and pleadings filed in three proceedings in Prowers County District Court and in a case filed in United States District Court for the District of Colorado on behalf of the Marstons. Although the Marstons signed the documents, they did not thoroughly review them. The evidence

presented to the master establishes convincingly that the Marstons relied upon the respondent for the language and legal arguments found in those documents. The hearing master's conclusion that the respondent's activities constituted the unauthorized practice of law is fully supported by the record.

The documents and pleadings drafted for the Marstons by the respondent mostly raised issues that were not legally cognizable. Much of the prose was rambling and was punctuated by personal attacks on opposing parties. The Marstons suffered the consequences of the respondent's inept efforts, incurring a substantial judgment against them for attorneys' fees, and in the case of Walter Marston, a judgment for criminal contempt and the imposition of a fine of $100.00. Moreover, the respondent's conduct exhibited contempt for the judicial process and seriously impugned the reputations of judicial officers.

The purpose of the requirement that a person must obtain a license from this court before engaging in the practice of law is to protect the public from unqualified persons who provide incompetent legal services. *Unauthorized Practice of Law Comm. v. Grimes*, 654 P.2d at 826. The present case dramatically illustrates the need to protect unsophisticated clients from damage that can result when unqualified persons attempt to provide guidance in the assertion of legal claims and defenses.[3]

The record suggests that unless restrained, the respondent will continue to engage in the unauthorized practice of law, with the likely consequence that those who rely upon him for legal advice and assistance will suffer injury. Accordingly, we hereby enjoin the respondent from the further unauthorized practice of law effective on the date of issuance of this opinion. Any future proceedings resulting from alleged violations of the injunction ordered today shall be tried, and any appropriate relief ordered, in the district court in the district in which the proscribed acts may occur. *See* C.R.C.P. 237(a) ("[t]he Supreme Court may enter an order enjoining the respondent from further conduct found to constitute the unauthorized practice of law, and make such further orders as it may deem appropriate...."). We further determine that the respondent is in contempt of this court pursuant to C.R.C.P. 239(d) and as punishment we impose a fine of $7,178.62, representing the attorneys' fees the Marstons incurred in 85CV109, the $400.00 in fees paid by the Marstons to the respondent, and the $100.00 fine for criminal contempt imposed on Walter Marston in 85CV109.[4] We further order that upon receipt of payment from the respondent, the clerk of this court distribute $4,524.02 to the State of Colorado, in reimbursement for the attorneys' fees paid by the state on the Marstons' behalf, and pay the balance of the proceeds of the fine to the Marstons, $2,654.60 of this balance to be used by them to pay attorneys' fees incurred in 85CV109. We decline, however, to order that the respondent be imprisoned. Although the respondent's misconduct was egregious, he has never before been subjected to sanctions for unauthorized practice of law. In the event of future violations, however, more serious sanctions including imprisonment may be determined to be necessary for the protection of the public and to impress upon the respondent the seriousness of his misconduct.

Finally, we impose the costs of this proceeding in the amount of $1,326.08 against the respondent. The respondent shall

---

3. The respondent filed no exceptions to the hearing master's findings. We therefore find it unnecessary to address the various arguments that he has advanced in documents he filed earlier with this court in support of his position that his activities in representing the Marstons were legally permissible. It suffices to say that we have considered those arguments and find no merit in them.

4. The hearing master recommended a fine of "$6,678.00, the amount of Marstons's attorney fees and costs." In fact, this represents only the attorneys' fees assessed against the Marstons in 85CV109. We conclude that the fine should also include $400.00 to reimburse the Marstons for moneys paid to the respondent for his services and $100.00 to reimburse Walter Marston for the fine he incurred for criminal contempt.

make payment for the fine and costs to the Supreme Court Unauthorized Practice of Law Committee, 600 17th Street, Suite 510–S, Denver, Colorado, 80203, within six months of the date this opinion is issued.