**In the Matter of Fred Yancy BOYER, Attorney–Respondent.**

No. 98SA58.

Supreme Court of Colorado, En Banc.

Nov. 1, 1999.

John S. Gleason, Attorney Regulation Counsel, James S. Sudler, Assistant Regulation Counsel, Denver, Colorado, Attorneys for Complainant.

Fred Yancy Boyer, Pro Se, Westminster, Colorado.

PER CURIAM.

This is an original proceeding in contempt based on a verified motion filed by the Office of Disciplinary Counsel (now Office of Regulation Counsel). The motion asked us to issue a contempt citation to the respondent, Fred Yancy Boyer, to show cause why he should not be held in contempt for violating our previous order immediately suspending him from the practice of law on April 16, 1998. *See* C.R.C.P. 241.4(c)(8) (now C.R.C.P. 251.3(c)(8)). On November 19, 1999, we issued a contempt citation to Boyer, ordering him to show cause why he should not be held in contempt for violating our suspension order. After considering Boyer's answer and the complainant's reply, we referred the matter to the presiding disciplinary judge (PDJ) for a hearing under C.R.C.P. 107, and the issuance of findings of fact, conclusions of law, and recommendations.

The PDJ found that the complainant had established beyond a reasonable doubt that Boyer was guilty of violating our April 16, 1998 order placing him on immediate suspension. As punishment for his conduct, the

PDJ recommended that the court order Boyer to pay a fine of $24,997.50, representing three times the amount of attorney's fees that Boyer collected while he was suspended. We accept the PDJ's findings and recommendations and make our rule absolute. We find Boyer guilty of contempt of this court's immediate suspension order. We further order Boyer to pay a fine in the amount of $24,-997.50, and to pay the costs of this proceeding.

## I.

Fred Yancy Boyer was admitted to practice law in Colorado in 1985.[1] He was suspended from practice on April 16, 1998. The complainant charged that Boyer violated that order of suspension and sought a contempt citation from this court. After referral to the PDJ, the parties stipulated that the contempt citation, which warned Boyer that "[a] fine or imprisonment may be imposed in this proceeding to vindicate the dignity of this court," contemplated punitive sanctions for contempt. The PDJ therefore required the complainant to prove that Boyer was guilty of contempt beyond a reasonable doubt. *See* C.R.C.P. 107(d)(1) (setting out procedures for trial and punishment in an indirect contempt proceeding where punitive sanctions may be imposed).

The complainant charged that Boyer practiced law in violation of the suspension order with regard to two clients: Guillermo Oyuela and Mark Andrew Johnson. Both clients were the victims of separate automobile accidents and prior to the suspension both hired Boyer to represent them. The conduct at issue post-dated the effective date of the suspension, and the PDJ determined that the complainant established the following facts beyond a reasonable doubt.

In both the Oyuela and Johnson matters, Boyer instructed his paralegal to continue using Boyer's professional letterhead in correspondence with the liability insurer involved in the two accidents. In the month

following his immediate suspension, Boyer discussed an arrangement with Shawn Mitchell, a lawyer, for Mitchell to assume responsibility for the legal representation of Oyuela and Johnson. The PDJ concluded that this arrangement was never consummated. Mitchell neither became the lawyer for either Oyuela or Johnson, nor supervised Boyer's activity in those cases.

In the Oyuela matter, Boyer analyzed the value of Oyuela's injuries for the purpose of making a demand on the insurer and he made direct representations to the insurer regarding that value. Boyer personally negotiated with the claims representative to settle Oyuela's claim. He gave the client advice about the settlement amount, the policy limits, and the likelihood that the insurer would offer additional amounts to settle the claim. Boyer convinced Oyuela to accept the insurer's offer. He then prepared documents affecting Oyuela's legal rights, and negotiated a reduction in the legal fees and costs that Oyela would pay him after the case settled. Finally, Boyer collected $8,332.50 in attorney's fees all of which he earned after the suspension.

In the Johnson case, Boyer analyzed the value of Johnson's injuries, made representations to the insurer with regard to the value of Johnson's injuries, and made a $50,000 demand on the insurer to settle Johnson's claim. He negotiated personally with a claims representative to settle the claim. He also instructed his paralegal to prepare correspondence on Mitchell's stationery for Mitchell's signature that purported to authorize Boyer's paralegal to negotiate directly with the insurer.

## II.

■ Based upon those facts, the PDJ concluded that Boyer practiced law in violation of the April 16 suspension order. We agree. We also recognize that:

There is no wholly satisfactory definition as to what constitutes the practice of law;

---

1. After the hearing in this contempt case, Boyer and the Office of Regulation Counsel entered into a conditional admission relating to the matters involved in this proceeding. *See* C.R.C.P. 251.22. On July 16, 1999, the PDJ accepted and approved the conditional admission, and ordered Boyer disbarred effective August 16, 1999. *See People v. Boyer*, No. 99PDJ064 (Colo. PDJ July 16, 1999). This contempt case is separate from that disciplinary proceeding.

it is not easy to give an all-inclusive definition. We believe that generally one who acts in a representative capacity in protecting, enforcing, or defending the legal rights and duties of another and in counselling, advising and assisting him in connection with these rights and duties is engaged in the practice of law.

*Denver Bar Ass'n v. Public Utils. Comm'n,* 154 Colo. 273, 279, 391 P.2d 467, 471 (1964). There are cases in which it is difficult to determine whether certain actions constitute the practice of law. This is not such a case. Analyzing the value of a client's personal injury claim, making demands on an insurer for settling a client's claim, and advising the client about whether to settle for a certain amount are all well within the ambit of the practice of law. *See In re Bodkin,* 21 Ill.2d 458, 173 N.E.2d 440, 442 (1961) (settling of personal injury action was "practice of law" even though insurer had admitted liability and was willing to pay claim); *State v. Schumacher,* 214 Kan. 1, 519 P.2d 1116, 1121–25, 1127 (1974) (stating that when a suspended attorney maintained an office where he held himself out to be a lawyer, used a letterhead describing himself as a lawyer, counseled clients in legal matters, negotiated with opposing counsel, and fixed and collected fees for services rendered by an associate, he engaged in the practice of law); *In re Petition for Disciplinary Action Against Ray,* 452 N.W.2d 689, 693 (Minn.1990) (advising clients in a legal matter and negotiating a settlement constitutes the unauthorized practice of law by a suspended lawyer); *see generally* David Rand, Jr., Annotation, *Nature of Legal Services or Law–Related Services Which May Be Performed for Others by Disbarred or Suspended Attorney,* 87 A.L.R.3d 279 (1978 & 1999 Supp.). Finally, collecting attorney's fees for your efforts under a contingent fee contract is without doubt the practice of law. *Cf. People v.Koransky,* 844 P.2d 668, 669 (Colo.1993) (taking payment from client for drafting of legal documents after being disbarred warranted finding of contempt for violating disbarment order).

■ Four things must be shown to prove punitive contempt: "(1) the existence of a lawful order of the court; (2) contemnor's knowledge of the order; (3) contemnor's ability to comply with the order; and (4) contemnor's willful refusal to comply with the order." *In re Marriage of Nussbeck,* 974 P.2d 493, 497 (Colo.1999). The parties stipulated that the first and second elements were satisfied. Boyer's expert medical witness's testimony established that Boyer had the capacity and ability to comply with our April 16 order. Finally, the PDJ found that "[t]he evidence presented at the evidentiary hearing firmly established that Boyer engaged in the questioned conduct voluntarily, knew that he was continuing in his efforts to resolve claims for both Oyuela and Johnson, knew that he was providing legal services, and had an awareness that engaging in such conduct was contrary to the court order of April 16, 1998." These findings are supported by the record. The PDJ found that all four parts of the *Nussbeck* test were satisfied, and therefore recommended that Boyer be found guilty of contempt. We accept the PDJ's findings, conclusions and recommendation and accordingly adjudge Boyer in contempt of this court.

### III.

■ We turn then to the issue of appropriate penalty. Although the complainant initially requested that Boyer receive a period of confinement for contempt, it withdrew that request following argument to the PDJ on the appropriate sentence. The PDJ reviewed three cases in which we discussed whether confinement was the proper sentence for contempt of the supreme court. *See Koransky,* 844 P.2d at 669; *Unauthorized Practice of Law Comm. v. Prog,* 761 P.2d 1111, 1116 (Colo.1988); *Unauthorized Practice of Law Comm. v. Grimes,* 654 P.2d 822, 826 (Colo.1982). We declined to impose a sentence of imprisonment on Koransky because of his "cooperative attitude during the contempt proceedings." 844 P.2d at 669. Koransky had practiced law after he was disbarred. *See id.* The case represented the first time that Koransky had been held in contempt, but we warned that "[s]hould [he] again be adjudged in contempt of this court, we will impose a severe sanction in order to

protect the public and to impress upon [him] the seriousness of his misconduct." *Id.*

Similarly, we did not sentence Prog to imprisonment because "he ha[d] never before been subjected to sanctions for unauthorized practice of law." *Prog,* 761 P.2d at 1116. However, we did sentence Grimes to six months' confinement in the county jail, with all but ninety days suspended, because of the large number of cases in which he had engaged in the unauthorized practice of law, and for his disregard of our injunctive order that prohibited him from practicing law. *See Grimes,* 654 P.2d at 826.

Boyer has not previously been held in contempt of this court. In addition, Boyer presented medical evidence tending to mitigate the seriousness of his offense. Under these circumstances, we agree with the PDJ that a period of imprisonment is not warranted. *But see People ex rel. Colorado Bar Ass'n v. Humbert,* 86 Colo. 426, 427–28, 282 P. 263, 263–64 (1929) (finding that lawyer who allowed his name to continue to appear as an attorney in the city and state directories and the city telephone directory after he was disbarred was in contempt of the supreme court and sentencing him to thirty days in the county jail).

▉ The PDJ concluded that a fine was appropriate. The evidence before the PDJ indicated that after he was suspended Boyer collected $8,332.50 in attorney's fees under the Oyuela contingent fee agreement. Although he acknowledged that we had imposed restitution in the *Koransky* contempt case, the PDJ found that an order of restitution payable to a private party such as Oyuela was precluded by our *Nussbeck* decision. *See Nussbeck,* 974 P.2d at 499 ("[A] punitive contempt order, intended to vindicate the dignity of the court, is not designed to benefit the interests of a third party.... Plainly and simply, a punitive contempt proceeding is a matter between the court and the offending party."). We are not prepared to say in this case that restitution is never permissible in a punitive contempt proceeding. Restitution to victims is considered entirely appropriate in criminal cases. *See, e.g.,* § 24–4.1–302.5(1)(h), 7 C.R.S. (1999) (addressing the right of the court to determine the amount of restitution to be paid to the victim by the person convicted of the crime). Restitution is not warranted in this case because the actual damages, if any, caused by Boyer's unauthorized practice of law are not a part of this record. We therefore agree that Boyer should be punished by a fine payable to this court. Because Boyer collected the $8,332.50 while he was suspended, the PDJ recommends that merely requiring Boyer to pay that amount would not be sufficient punishment. The PDJ suggests that three times the amount collected, $24,997.50, would be a fit punishment in this case. Boyer has presented us with no reason why this amount would be unreasonable or excessive. We have therefore decided to accept the PDJ's recommendation of the amount of the fine.

IV.

Accordingly, we make the rule to show cause absolute and adjudge Fred Yancy Boyer in contempt of this court for violating our April 16, 1998 order. It is ordered that Boyer pay a fine in the amount of $24,997.50 to the Clerk of the Supreme Court, not later than 120 days after the issuance of this opinion. Boyer is further ordered to pay the costs of this contempt proceeding, in an amount to be determined by the PDJ, to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432.

Justice BENDER does not participate.